JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
E-mail: jboyle@nevadafirm.com
HANNA S. GOODWIN, ESQ.
Nevada Bar No. 13878
E-mail: hgoodwin@nevadafirm.com
HOLLEY DRIGGS, WALCH
FINE WRAY PUZEY & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:     702/791-0308
Facsimile:     702/791-1912

BRIAN C. BUESCHER, ESQ.
Brian.Buescher@KutakRock.com
PATRICK B. GRIFFIN, ESQ.
Patrick.Griffin@KutakRock.com
KUTAK ROCK LLP
1650 Farnam Street
Omaha, Nebraska 68102
Telephone:     402/346-6000
Facsimile:     402/346-1148

*Pro Hac Vice Applications Forthcoming*

*Attorneys for Plaintiff Meridian OHC Partners, LP*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MERIDIAN OHC PARTNERS, LP,<br><br>Plaintiff,<br><br>v.<br><br>CYANOTECH CORPORATION, a Nevada corporation; MICHAEL A. DAVIS, an individual; and RUDOLF STEINER FOUNDATION, INC., d/b/a RSF SOCIAL FINANCE, a New York corporation,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT**<br><br>**(JURY DEMAND REQUESTED)** |

Plaintiff Meridian OHC Partners, LP ("Meridian"), pursuant to the Federal Rules of Civil Procedure, hereby states and alleges as follows for its claims for relief against Defendants Cyanotech Corporation ("Cyanotech" or the "Company"); its Chairman of the Board, Michael A. Davis; and the Rudolf Steiner Foundation, Inc., d/b/a RSF Social Finance ("RSF"):

- 1 -

## I. THE PARTIES

1.     Meridian is an investment firm specializing in small public companies.  Over the past 14 years, Meridian's principals have made material investments in more than 30 such businesses. Meridian's business model involves taking large stakes in companies that are significantly undervalued by the market. Meridian is Cyanotech's third largest stockholder, with a 13% ownership position.   Meridian's partners are citizens of Connecticut, Florida, Texas and Wisconsin.

2.     Cyanotech is a production company, producing nutritional supplements including BioAstin®, Natural Astaxanthin, and Hawaiian Spirulina Pacifica®. Cyanotech is incorporated in the State of Nevada.  According to its latest Annual Report on Form 10-K, Cyanotech has approximately 1,500 stockholders of record.  Upon information and belief, at least 100 stockholders of record have addresses in Nevada appearing on the stock ledger of the corporation. Cyanotech does business in Nevada directly through product sales to customers in Nevada.  Cyanotech's principal place of business is at the Natural Energy Lab of Hawaii on the Island of Hawaii.

3.     Michael A. Davis ("Davis") has been the Chairman of Cyanotech's Board of Directors since 2011 and became Cyanotech's largest stockholder in 2002 when he acquired a 19.6% stake in the Company. According to a Schedule 13G filed by Davis on February 5, 2016, Davis claims beneficial ownership of approximately 19.6% of Cyanotech.   Upon information and belief, Davis is a citizen of the State of California.

4.     RSF is a charitable, not-for-profit 501(c)(3) corporation organized in New York.  RSF provides capital to non-profit and for-profit social enterprises addressing key issues in the areas of food and agriculture, education and the arts, and ecological stewardship. According to Cyanotech's most recent proxy statement, RSF is the second largest stockholder in Cyanotech, holding an approximately 13.5% stake.  RSF's principal place of business is in California.

///

///

11644-01/1697588.doc
4842-7970-0017.17

## II.  JURISDICTION AND VENUE

5.      This Court has federal-question jurisdiction over this action under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa(a), because this action concerns violations of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*

6.      This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332 because Plaintiff Meridian is a citizen of different states than all Defendants and the matter in controversy exceeds $75,000, with the amount of damages sought by Plaintiff well in excess of that amount.

7.      This Court has supplemental jurisdiction over Meridian's state-law claims under 28 U.S.C. § 1367(a) because they are so related to claims in the action within this Court's federal-question jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution in that the state-law claims are factually interdependent with the federal-law claims since the violations of federal law in this case were committed for the purpose of avoiding compliance with Nevada's Acquisition of Controlling Interest statute, Nev. Rev. Stat. Ann. §§ 78.3781–78.3793.

8.      This Court is the proper venue for this action under 28 U.S.C. § 1391 and 15 U.S.C. § 78aa(a) because Cyanotech is incorporated in Nevada and organized under the laws of that state and transacts business in this district.  Venue also is proper with respect to claims against Davis and RSF because the consequences of their actions were felt in this district and the claims against them involve the same nucleus of operative facts as pertain to the securities violations alleged herein.

## III.  FACTUAL BACKGROUND

A.      **Section 13(d) of the Exchange Act**

9.      Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act") requires a person to file statements of beneficial ownership when such person, either alone or as part of a group, becomes the beneficial owner of 5% or more of a class of securities registered under the Exchange Act.  Cyanotech's common stock is registered under the Exchange Act.

11644-01/1697588.doc
4842-7970-0017.17

10.     Section 13(d) is implemented by regulations adopted by the Securities and Exchange Commission ("SEC"), including Rule 13d-1, codified at 17 C.F.R. § 240.13d-1, which generally requires persons who are required to file reports under Section 13(d) to do so on a long-form Schedule 13D, and to do so within 10 days after the date on which they become a 5% stockholder.

11.     Certain passive investors may report on a short-form Schedule 13G instead of a long-form Schedule 13D.  In order to qualify for use of the short-form Schedule 13G, such person must (i) have acquired securities in the ordinary course of his business and not with the purpose or with the effect of changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having such purpose or effect; and (ii) be an institutional investor of the type described in Rule 13d-1.  In addition, Schedule 13G is not available to any person who is the beneficial owner of 20% or more of the applicable class of securities.  A Schedule 13G must be filed within 45 days after the end of the calendar year in which the person became obligated to file, and amendments must be filed annually within 45 days after the end of the calendar year to report any changes.  A person who has acquired the securities with any purpose, or with the effect, of changing or influencing the control of the issuer is not eligible to file on Schedule 13G. *See* Rule 13d-1(b)(1)(i).

12.     Section 13(d)(3) of the Exchange Act addresses group membership for purposes of Section 13(d) and provides that "[w]hen two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection." 15 U.S.C. § 78m(d)(3). The SEC regulation under Section 13(d)(3) further provides that "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership . . . of all equity securities of that issuer beneficially owned by any such persons." Rule 13d-5(b)(1), codified at 17 C.F.R. § 240.13d-5(b)(1).

///

- 4 -

*1.  Davis Violated Section 13(d) by Failing to File on Schedule 13D Because He Has the Ability to Control, and in Fact Does Control, Cyanotech*

13.   Davis has reported his beneficial ownership on Schedule 13G since 2002. Davis joined the Company's board of directors in March 2003 and became its chairman of the board in 2011.  As a result of his position on Cyanotech's ultimate governing authority, Davis is in a position where he could change or influence control of Cyanotech.  In addition, upon information and belief, Davis has in fact exercised control over Cyanotech by, among other things, terminating several of the Company's chief executive officers, making other changes to the Company's senior staff, changing the Company's strategy and operations, and deciding who should be added to the Company's board of directors.  As a result, Davis is not eligible to file on Schedule 13G and is required to file on Schedule 13D.  To date, Davis has not filed a Schedule 13D.

14.   Even if Davis was originally eligible to file on Schedule 13G, he was required to change his filing to a Schedule 13D once he obtained the ability to influence control of the Company.  According to Rule 13d-1(e), any person who previously reported on Schedule 13G must file a Schedule 13D within 10 days after such person holds securities with the purpose or effect of changing or influencing control of the issuer.  Davis' ability to control Cyanotech began no later than the time he joined the board in March 2003.

*2.  Davis Violated Section 13(d) by Routinely Making Late Filings and Failing to Make Required Filings*

15.   Davis has repeatedly made late filings of amendments to his Schedule 13G and in some cases failed to file them at all.  According to Rule 13d-1(d), a person must file a Schedule 13G within 45 days after the end of the calendar year in which the person became obligated to report.   In addition, Rule 13d-2 provides that any person who has filed a Schedule 13G must amend the Schedule 13G within 45 days after the end of each calendar year if, as of the end of the calendar year, there have been any changes in the information reported in the previous Schedule 13G.

- 5 -

16.     Davis first filed a Schedule 13G on October 25, 2002, reporting a 19.6% ownership stake in Cyanotech. Despite the requirement to amend under Rule 13d-1(d) and to do so within 45 days after the end of the calendar year, Davis did not file another Schedule 13G disclosure until May 19, 2004, when he reported a 17.1% ownership in Cyanotech. Davis filed his next Schedule 13G on April 26, 2005 to report a 16.6% ownership stake. These reports were each more than two months late.

17.     Davis did not file another Schedule 13G until February 14, 2011, when he reported a 19.2% ownership stake in Cyanotech. Davis followed this with an additional Schedule 13G on June 2, 2011, reporting a 19.65% ownership stake in Cyanotech.

18.     Davis filed a Schedule 13G on February 14, 2013, reporting a 19.9% ownership stake in Cyanotech.

19.     Davis filed a Schedule 13G on March 14, 2014, reporting a 19.8% ownership stake in Cyanotech and a Schedule 13G on March 25, 2015, reporting a 19.7% ownership stake in Cyanotech. Each of these filings was a month late.

20.     Despite a requirement under federal law to file amendments to report any change in holdings, Davis made no filings on Schedule 13G in 2003, 2006, 2007, 2008, 2009, 2010, and 2012 to reflect any changes to his holdings during those years.

### 3.     *Davis and RSF Violated Section 13(d) Because They Are Part of an Undisclosed Group*

21.     Davis has a very close relationship with RSF.  When the Company's former CEO joined the Company in 2011, Davis took him to visit RSF's offices on his very first day on the job. A Google search with Davis' name and RSF returned 9,170 results as of May 1, 2016.  Based on information and belief, Davis was responsible for RSF acquiring the majority, if not the entirety, of RSF's stake in Cyanotech. This was accomplished through a series of stock transfers by Davis and entities he controls, and via a negotiated block trade that Davis facilitated and financed.

22.     RSF acquired most of its Cyanotech shares in 2011.  According to the Company's SEC reports, Cyanotech began that year with a different large stockholder,

VitaeLab AS, a Norwegian vitamin and supplements company, that based on knowledge and belief was, for some time, a large bulk customer of the Company.  When VitaeLab acquired a 5% interest in Cyanotech in 2008, VitaeLab disclosed it was an active investor and might seek to influence the Company and its board of directors.  Accordingly, it reported its investment on Schedule 13D.  Later in 2008, VitaeLab amended its Schedule 13D to report that its ownership interest in Cyanotech had risen materially to 9.7%, the level at which it remained thereafter.  Based on information and belief, VitaeLab requested a seat on Cyanotech's board of directors and the Company rejected this request.

23.     Based on information and belief, VitaeLab called the Company's then-CEO in 2011 and told the then-CEO it was interested in selling its 9.7% stake and asked whether the CEO knew of any interested buyers.  Based on information and belief, the then-CEO reported the substance of this call to Davis.  According to RSF's Schedule 13G filed on May 27, 2011 (reporting RSF's acquisition) and VitaeLab's last amendment to its Schedule 13D filed on May 31, 2011 (reporting VitaeLab's sale), RSF purchased VitaeLab's shares on May 17, 2011.  According to RSF's 2011 IRS annual report on Form 990, Davis gave RSF a $2.5 million cash donation in 2011, which was sufficient to fund RSF's entire purchase.  A review of other available RSF Form 990s indicates the magnitude of this $2.5 million cash donation was unique and not repeated in other years.  Based on information and belief, RSF used the cash donation from Davis to purchase VitaeLab's stake in the Company.

24.     Davis has periodically made transfers of additional shares of Cyanotech common stock to RSF.  Davis did not make required Form 4 filings with the SEC to report many of these transfers.  Accordingly, it is necessary to look to other sources of information to identify the timing and amounts of these transfers.  The first transfer for which evidence has been obtained (RSF's Form 1990 for 2011) involved 76,998 shares transferred on February 17, 2011 from Davis' Skywords Foundation.  Another transfer of 30,769 shares was made in 2014 (and known to have been made to RSF because RSF belatedly made its required Form 4 filing).  Davis is believed to have transferred another 150,036 shares of Cyanotech stock to RSF in 2010, but neither Davis nor RSF reported this transaction.

11644-01/1697588.doc
4842-7970-0017.17

25.     Davis regularly added to his Cyanotech holdings even as he was donating Cyanotech shares to RSF.  Between February 14, 2011 and June 2, 2011, Davis acquired 100,000 shares of Cyanotech stock in the open market, thus quickly recouping the 76,998 shares Davis donated to RSF at the beginning of that period.

26.     According to RSF's SEC filings, Cyanotech is the only public company in which RSF has ever held a 5% or greater ownership position.  According to its SEC filings, RSF has never sold a single share of Cyanotech common stock since it became a holder of such securities more than five years ago.  Based on its 2011 Form 990, RSF's stake in Cyanotech comprised 30% to 40% of the value of its portfolio of publicly traded securities.

27.     The investment operations of foundations such as RSF are governed by the so-called "prudent investor rule," which requires these entities to maintain diversified investment portfolios, protect the portfolio's overall liquidity and avoid investing large portions of the portfolio in speculative investments.  Notwithstanding the "prudent investor rule," RSF has held 30% to 40% of its investment portfolio in a non-income-producing, illiquid microcap company for more than five years, and continues to do so.

28.     Upon information and belief, RSF is holding, and will continue to hold, its Cyanotech shares on Davis's behalf and for his benefit, allowing him to control and vote a much larger share of Cyanotech's stock than the 19.6% stake in which he has disclosed an ownership interest.

     **4.**     ***RSF and Davis Have Violated Section 13(d) Reporting Requirements by Filing on Schedule 13G Despite Owning More Than 20% of Cyanotech Stock***

29.     Davis and RSF act together to collectively own and control approximately 33% of the Company's outstanding common stock.  Rule 13d-5(b)(1) provides that "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership . . . of all equity securities of that issuer beneficially owned by any such

persons." Therefore, RSF and Davis each are deemed to have acquired beneficial ownership of the entire 33% position.

30.     Under Rule 13d-1(c)(3), persons who own 20% or more of a public company's securities may not file on Schedule 13G and instead must file on Schedule 13D.  Neither Davis nor RSF has filed a Schedule 13D as required by law.

> **5.     Davis Violated Section 13(d) Because His Schedules 13G Contain Material Misstatements and Omissions**

31.     The substance of Davis' Schedule 13G filings is also defective.  Some of Davis' shares are held by a trust that has a third-party trustee.  Under SEC rules, this trustee also is required to file reports of beneficial ownership even though the same shares are included in Davis' filings.  In some cases, the disclosures by the trustee about the shares held in the trust are different than the disclosures Davis made regarding the shares held in the same trust.  Further, the regular reshuffling of shares among the various Davis entities makes review and understanding of what Davis holds and when and how he acquired the shares extremely difficult.

32.     Davis' inaccurate Schedules 13G, his failure to file Schedules 13D and his failure to make required Form 4 filings have deprived stockholders such as Meridian of the information they are entitled to receive by law regarding the ownership Davis has in Cyanotech and the level of control he is able to exert on Cyanotech.

33.     Davis further knowingly caused Cyanotech to file SEC reports that contained material misstatements about his beneficial ownership of Cyanotech shares and his voting control over the Company.  These material misstatements expose the Company to significant liability from private securities lawsuits and SEC enforcement actions.

> **B.     Nevada Control Share Statute**

> **1.     Davis is Trying to Entrench Himself by Controlling a Voting Stake That is Large Enough to Prevent the Removal of Directors While at the Same Time Not Triggering the Nevada Control Share Statute**

34.     Under Nevada corporation law, a vote of stockholders representing not less than two-thirds of the voting power of the corporation is required to remove a director from

office.  Nev. Rev. Stat. Ann. § 78.335 (West 2016).  Therefore, the size of the 33% block that Davis and RSF control is very significant, since it can block any attempt to remove a director.

35.     Nevada corporation law also provides that if an "acquiring person" acquires voting shares that allow the acquiring person to exercise one-fifth or more of the voting power of the corporation, then the voting rights of the shares in excess of this one-fifth level are suspended unless and until such voting rights are restored by a vote of the non-interested stockholders.  Nev. Rev. Stat. Ann. § § 78.378 to 78.3793.

36.     Under Nevada law, an "[a]cquiring person" is "any person who, individually or in association with others, acquires or offers to acquire, directly or indirectly, a controlling interest in an issuing corporation."  Nev. Rev. Stat. Ann. § 78.3782.  The term "[c]ontrolling interest" means "the ownership of outstanding voting shares of an issuing corporation sufficient, . . . , to enable the acquiring person, directly or indirectly and individually or in association with others, to exercise:

1.     One-fifth or more but less than one-third;

2.     One-third or more but less than a majority; or

3.     A majority or more, of all the voting power of the corporation in the election of directors."

Nev. Rev. Stat. Ann. § 78.3785.

37.     Davis and RSF together are an "acquiring person" within the meaning of Nev. Rev. Stat. Ann. § 78.3782 because in association with each other they have acquired ownership of outstanding voting shares of Cyanotech that enable them to exercise 33% of the voting power of Cyanotech in the election of directors.

38.     Under Nevada law, the voting rights of the "control shares" acquired by an acquiring person must be approved by the corporation's non-interested stockholders. The term "control shares" means "those outstanding voting shares of an issuing corporation which an acquiring person and those persons acting in association with an acquiring person:

1.     Acquire in an acquisition or offer to acquire in an acquisition; and

- 10 -

11644-01/1697588.doc
4842-7970-0017.17

1         2.    Acquire within 90 days immediately preceding the date when

2               the acquiring person became an acquiring person."

3 Nev. Rev. Stat. Ann. § 78.3784.

4     39.    Based on the Company's SEC filings, Cyanotech's stockholders have not

5 approved the voting rights of Davis' and RSF's shares.

6     40.    Davis has a motive to conceal his real ownership stake in Cyanotech. Davis'

7 undisclosed control of 33% of the voting power of Cyanotech precludes other stockholders

8 from removing Davis' hand-picked directors. At the same time, Davis' controlling stake, if

9 not concealed, would trigger application of the Nevada control share statute, which would

10 deny him the voting rights of the control shares absent non-interested shareholder approval.

11 In order to acquire his 33% voting block without triggering the Nevada control share statute,

12 Davis parked shares that are under his control with RSF.

13     C.    **Davis is Unilaterally Running the Company for his Own Benefit**

14     41.    In his capacity as chairman of the board and largest stockholder, Davis

15 exercises substantial control over the Company. Since 2007, the Company has had five

16 CEOs. Based on information and belief, Davis orchestrated the departures of these CEOs

17 because they attempted to run the Company for the benefit of all stockholders rather than the

18 personal desires of Davis.

19     42.    Based on knowledge and belief, Davis replaced Cyanotech's previous outside

20 law firm with a law firm that does a substantial amount of legal work for himself and entities

21 he controls, and is therefore primarily loyal to Davis rather than the Company.

22     43.    As chairman of Cyanotech's board of directors, Davis has regularly called

23 meetings of the board of directors without providing required notice to all of the directors. In

24 so doing, Davis excluded two of Cyanotech's directors, Gerald Cysewski and Brent Bailey

25 (who has since resigned), from these meetings.

26     44.    In January 2015, David L. Vied was appointed to the Cyanotech board at the

27 urging of Davis. Mr. Vied is an executive recruiter for a national executive recruiting firm.

28 ///

11644-01/1697588.doc
4842-7970-0017.17

45.     In March 2016, Mr. Vied, who as an executive recruiter recruited Mr. Bailey to be Cyanotech's CEO, provided the deciding vote (the fourth vote necessary for a majority of a six-person board) for the forced resignation of Mr. Bailey. Shortly after this vote, Mr. Vied's executive recruiting firm was hired, at the direction of Davis, to recruit Mr. Bailey's successor. Mr. Vied thus voted on a matter in which he had a material conflict of interest.

46.     Based on knowledge and belief, since Mr. Bailey's forced resignation as CEO, Davis has taken control of Cyanotech's business activities, including changing the Company's strategy, personally changing the job responsibilities and reporting assignments of people working within the Company, and made unilateral changes to the Company's operating plan.

47.     Based on knowledge and belief, Davis and the other Cyanotech directors have not, for more than 13 months, paid bonuses to Cyanotech management that were accrued in fiscal year 2015 (the year ended March 31, 2015), thereby exposing the Company to significant penalties and interest under applicable law.

**D.     Davis Serves on the Cyanotech Audit Committee Despite Being Ineligible**

48.     When a public company receives allegations of unlawful behavior by its chairman or CEO, such allegations are typically referred to its audit committee for independent investigation.

49.     The Sarbanes-Oxley Act established more stringent rules for persons who serve on the audit committees of listed companies such as Cyanotech. Under these rules, each member of an audit committee must be "independent" and may not be an "affiliated person" of the company or any of its subsidiaries. Sarbanes-Oxley Act § 301; Exchange Act Rule 10A-3(b)(1)(ii)(B); Nasdaq Rule 5605(c)(2)(A)(ii). The Nasdaq listing standards incorporate the requirements of Exchange Act Rule 10A-3. Nasdaq Rule 5605(c)(2)(A)(ii). Cyanotech is listed on Nasdaq.

50.     Under Nasdaq Rule 5605(a), the term "Independent Director" means "a person other than an Executive Officer . . . ," and the term "Executive Officer" means "those officers covered under Exchange Act Rule 16a-1(f)." The officers covered under Rule 16a-1(f) are "the issuer's president, principal financial officer, principal accounting

- 12 -

1   officer (or, if there is no such accounting officer, the controller), any vice-president of the

2   issuer in charge of a principal business unit, division or function (such as sales, administration

3   or finance), any other officer who performs a policy-making function, or any other person

4   who performs similar policy-making functions for the issuer." (emphasis added)  As alleged

5   previously, Davis performs substantial policy-making functions for Cyanotech.

6        51.    Under Rule 10A-3(e), the term "affiliate of" or "a person affiliated with" a

7   specified person means "a person that directly, or indirectly through one or more

8   intermediaries, controls, or is controlled by, or is under common control with, the person

9   specified."  The rule also contains a safe harbor that "[a] person will be deemed not to be in

10  control of a specified person for purposes of this section if the person . . . is not the beneficial

11  owner, directly or indirectly, of more than 10% of any class of voting equity securities of the

12  specified person."  The Rule also states that this language "only creates a safe harbor position

13  that a person does not control a specified person. The existence of the safe harbor does not

14  create a presumption in any way that a person exceeding the [10%] ownership requirement . . .

15  of this section controls or is otherwise an affiliate of a specified person."

16       52.    Davis is the Company's single largest stockholder.  He controls at least 19.6%

17  and as much as 33% of the Company's voting power.  In addition, upon information and

18  belief, Davis has in fact exercised control over the Company by, among other things, taking

19  control of Cyanotech's business activities, including changing the Company's strategy;

20  personally changing the job responsibilities and reporting assignments of people working

21  within the Company; making unilateral changes to the Company's operating plan; and

22  deciding who should be added to the Company's board of directors.

23       53.    Davis is acting as an "executive officer" and is an "affiliated person" of the

24  Company.  Therefore, he is ineligible to serve on the Company's audit committee.  Davis'

25  service on the Company's audit committee violates the Company's Nasdaq listing.  Davis'

26  service on the audit committee also potentially gives him knowledge of any allegations of

27  unlawful behavior on his part.

28  ///

- 13 -

E.   **The Cyanotech Board Has Been Given Notice of These Violations of Law**

54.    Meridian informed the Cyanotech Board of these violations of law in a letter dated May 6, 2016.  A copy of this letter is attached as Exhibit A.

55.    In its May 6, 2016 letter, Meridian provided facts illustrating Davis' failure to comply with Federal securities laws; Cyanotech's failure to make accurate SEC filings due to Davis' false reporting; Davis' manipulation of Cyanotech's operations through his collusion with RSF; the orchestration of improper board meetings where properly appointed board members were not given notice of the meetings; along with numerous other failures that caused material damage to Cyanotech and its stockholders.

56.    Pursuant to Exchange Act Rule 12b-20, Cyanotech has a duty to correct any misstatements or omissions in documents filed with the SEC.  17 C.F.R. § 240.12b-20.

57.    Despite receiving the May 6, 2016 letter, the board of directors of Cyanotech by all appearances has taken no action to address these material misstatements.

58.    Despite receiving the May 6, 2016 letter, the board of directors of Cyanotech by all appearances has taken no action to address the breaches of fiduciary duty identified herein.

59.    Because the Board has failed to act, Meridian asserts rights herein on behalf of Cyanotech to protect its interest, demand having been made and ignored and further demand being futile.

F.   **Meridian Purchased Shares in Reliance Upon Statements Made by Davis and RSF Regarding Their Ownership Interests**

60.    In June 2014, Meridian began purchasing shares of Cyanotech upon a review of the Company, its products, its investment potential and public disclosures by and regarding the Company and the Company's stockholders, including Davis and RSF.

61.    From June 2014 until April 5, 2016, Meridian purchased over 700,000 shares of Cyanotech, costing over $4.3 million, resulting in an approximately 13% stake in Cyanotech.

///

62.     Between June 2014 and April 2016, when Meridian was increasing its stake in Cyanotech, Meridian was aware of RSF's significant stake in Cyanotech but believed this stake eventually would be sold because it would be extremely unusual for a nonprofit like RSF to maintain such a large stake in a non-income-producing, illiquid, microcap company such as Cyanotech.  Meridian believed RSF's stock might become available for purchase by Meridian if Meridian chose to significantly increase its stake in the Company.

63.     In early April 2016, after the forced resignation of Cyanotech's CEO, Meridian learned the relationship between Davis and RSF was much closer than publicly disclosed.  At that point, Meridian discovered that Davis had given $2.5 million to RSF in 2011, the same year RSF purchased almost 10% of Cyanotech's stock for at least $1.9 million.  Meridian also discovered that all of RSF's Cyanotech stock was traceable to Davis, that RSF's Cyanotech holdings were between 30% and 40% of its public securities portfolio and that RSF has never sold a single share in Cyanotech despite Cyanotech's lackluster investment performance.

64.     Prior to April 2016, Meridian did not know that Davis and RSF were acting in concert to exercise absolute control over Cyanotech and were so closely aligned that they were a "group" within the meaning of the federal securities laws and an "acquiring person" within the meaning of the Nevada Control Share Statute.

65.     If Meridian had known these facts, Meridian would not have purchased shares in Cyanotech.

66.     In making purchases of Cyanotech stock, Meridian relied upon the accuracy of the Company's SEC filings, and the SEC filings of Davis and RSF.

///

///

///

///

///

///

11644-01/1697588.doc
4842-7970-0017.17

## IV.  CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment and Injunctive Relief under the
### Exchange Act against Davis and RSF)

67.     Meridian incorporates the averments contained in Paragraphs 1 through 66 as though fully stated herein.

68.     Davis owns greater than 5% of the shares of Cyanotech and has the ability to influence or control, and does influence or control Cyanotech.

69.     Davis, with a 19.5% stake in Cyanotech, and RSF, with a 13.5% stake in Cyanotech, together own and control 33% of the outstanding stock of Cyanotech.

70.     Davis, through gifts of Cyanotech stock to RSF, a $2.5 million cash gift to RSF that was used to purchase Cyanotech shares, and continued donations to RSF, has substantial influence over RSF and causes RSF to vote its Cyanotech shares with Davis' shares on all stockholder votes of Cyanotech.

71.     RSF continues to hold Cyanotech stock at the instruction and expectation of one of its largest donors, Davis, despite the stock underperforming and constituting 30% of RSF's portfolio.

72.     Davis and RSF constitute a "group" pursuant to Rule 13d-5 because Davis and RSF have agreed to act together for the purpose of acquiring, holding, voting or disposing of equity securities of Cyanotech.  17 C.F.R. § 240.13d-5(b)(1).

73.     Davis and RSF have combined their voting power in furtherance of the common objective of furthering the goals of Davis.

74.     Meridian has made a demand to Cyanotech and its board for corrective action, and Cyanotech has refused to take corrective action.

75.     The issues outlined herein are an actual case in controversy within the jurisdiction of this Court.

76.     Meridian seeks a declaration of this Court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, finding as follows:

11644-01/1697588.doc
4842-7970-0017.17

a.   That Davis owns greater than 5% of the shares of Cyanotech, has the power to control and influence Cyanotech and therefore is required to file Schedule 13D, but has not done so;

b.   That Davis and RSF constitute a "group" pursuant to Rule 13d-5 that has acquired beneficial ownership for the purposes of Section 13(d) and 13(g) of the Exchange Act;

c.   That Davis and RSF are required by Rule 13d-1(c)(3) and federal securities laws to file a Schedule 13D, but have not done so;

d.   That Davis and RSF must file truthful and complete Schedules 13D pursuant to federal law;

e.   That Meridian is entitled to preliminary and permanent injunctive relief ordering Davis and RSF to file truthful and complete Schedules 13D pursuant to federal law; and

f.   Any other relief the Court finds fair and equitable.

## SECOND CLAIM FOR RELIEF

**(Declaratory Judgment and Injunctive Relief under the Nevada Acquisitions of Controlling Interest Statutes against Davis and RSF)**

77.   Meridian incorporates the averments contained in Paragraphs 1 through 76 as though fully stated herein.

78.   Davis, with a 19.5% stake in Cyanotech, and RSF, with a 13.5% stake in Cyanotech, together own 33% of the outstanding stock of Cyanotech.

79.   Davis, through gifts of Cyanotech stock to RSF, a $2.5 million cash gift to RSF which was used to purchase Cyanotech shares, and through continued donations to RSF, has significant influence over RSF and causes RSF to vote its Cyanotech shares with Davis' shares on all stockholder votes of Cyanotech.

///

///

- 17 -

11644-01/1697588.doc
4842-7970-0017.17

80.     RSF continues to hold Cyanotech stock at the instruction and expectation of one of its largest donors, Davis, despite the stock underperforming and constituting 30% to 40% of RSF's portfolio, in violation of the prudent fiduciary rule for nonprofit organizations.

81.     Davis and RSF together constitute an "acquiring person" within the meaning of Nev. Rev. Stat. Ann. § 78.3782 because they, in association with each other, acquired a "controlling interest" in Cyanotech as defined by Nevada statute.   Nev. Rev. Stat. Ann. § 78.3785.

82.     As an "acquiring person," Davis and RSF are entitled to "only such voting rights in the control shares as are conferred by a resolution of the stockholders of the corporation, approved at a special or annual meeting of the stockholders."   Nev. Rev. Stat. Ann. § 78.379(1).

83.     Davis and/or RSF have not taken the requisite steps as required by Nev. Rev. Stat. Ann. § 78.379 to obtain authority from the stockholders to allow the group's shares, in excess of a 20% ownership stake, to have voting rights.

84.     Meridian has made a demand to Cyanotech and its board for corrective action, and Cyanotech has refused to take corrective action.

85.     The issues outlined herein are an actual case in controversy within the jurisdiction of this Court.

86.     Meridian seeks a declaration of this Court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the Nevada Uniform Declaratory Judgment Act, Nev. Rev. Stat. Ann. §§ 30.030–30.160 (West 2016), finding as follows:

    a.    That Davis and RSF together are an "acquiring person" under Nev. Rev. Stat. Ann. § 78.3785;

    b.    That the ownership of Davis and RSF together constitute a "controlling interest" of greater than one-fifth the ownership of outstanding voting shares of Cyanotech under Nev. Rev. Stat. Ann. § 78.3785;

    c.    That all voting rights for shares owned by Davis and RSF above

- 18 -

1    a 20% ownership stake do not have voting rights under Nev.

2    Rev. Stat. Ann. § 78.379 until the provisions of Nev. Rev. Stat.

3    Ann. § 78.379 requiring shareholder approval of voting rights

4    are met;

5    d.    That Meridian is entitled to preliminary and permanent

6    injunctive relief 1) restraining Davis and RSF from utilizing any

7    voting rights in excess of a 20% ownership stake among Davis

8    and RSF combined; and 2) ordering Davis and RSF to seek

9    appropriate approval under Nev. Stat. Ann. § 78.379 in the

10    event they wish to exercise voting rights above the 20%

11    threshold; and

12    e.    Any other relief the Court finds fair and equitable.

### THIRD CLAIM FOR RELIEF

**(Injunctive Relief against Davis by Meridian and on behalf of Cyanotech)**

87.    Meridian and Meridian on behalf of Cyanotech incorporate the averments contained in Paragraphs 1 through 86 as though fully stated herein.

88.    Davis, with a 19.5% stake in Cyanotech, and RSF, with a 13.5% stake in Cyanotech, together own 33% of Cyanotech.

89.    Davis, through gifts of Cyanotech stock to RSF, a $2.5 million cash gift to RSF that was used to purchase Cyanotech shares, and continued donations to RSF, effectively controls RSF and causes RSF to vote with Davis' shares on all material decisions of Cyanotech.

90.    Davis and RSF constitute a "group" pursuant to Rule 13d-5 because Davis and RSF have agreed to act together for the purpose of acquiring, holding, voting or disposing of equity securities of Cyanotech. 17 C.F.R. § 240.13d-5(b)(1).

91.    Due to the 33% stake held by Davis and RSF as a group, Davis and RSF are able to control Cyanotech given that it takes a 67% ownership interest to remove directors of

11644-01/1697588.doc
4842-7970-0017.17

the board, allowing Davis and RSF to essentially veto as a group the removal of any director from the board.

92.     Davis and RSF violated Section 13(d) by failing to disclose their group status and their control intent, failing to file Schedule 13D reports, and depriving other stockholders such as Meridian and Cyanotech of material information required by law.

93.     Meridian and Cyanotech are entitled to injunctive relief because Davis' and RSF's security filings are inaccurate, incomplete, or misleading on matters expressly demanded by Section 13(d).

94.     Meridian and Cyanotech have suffered the irreparable harm of failing to receive information mandated by Section 13(d).

95.     Irreparable injury would occur to Meridian, other stockholders, Cyanotech, and the investing public if Davis and RSF were allowed to continue their activities without correcting and amplifying their Schedules 13D.

96.     Meridian and Meridian on behalf of Cyanotech seek a ruling granting injunctive relief pursuant to the Securities Exchange Act of 1934 as follows:

      a.     Enjoining Davis and RSF from filing inaccurate, incomplete, or misleading federal securities filings;

      b.     Requiring the filing of Schedules 13D by Davis and RSF containing truthful and complete statements as required by Section 13D;

      c.     Enjoining the voting of any shares by Davis and RSF until complete and truthful Schedule 13D filings are made by Davis and RSF;

      d.     Enjoining the voting of shares owned by Davis and RSF in excess of a 20% ownership stake pursuant to Nev. Rev. Stat. Ann. § 78.379 until such time Davis and RSF comply with the provisions of Nev. Rev. Stat. Ann. § 78.379 to confer voting rights in the control shares as approved by Cyanotech's

- 20 -

1    stockholders; and

2    e.    Any other relief the Court finds fair and equitable.

3    ### FOURTH CLAIM FOR RELIEF

4    ### (Section 10(b)(5) Securities Fraud Against Davis)

5    97.    Meridian incorporates the averments contained in Paragraphs 1 through 96 as
6    though fully stated herein.

7    98.    Davis has made misrepresentations or omissions of material facts through
8    Schedule 13G and the failure to file Schedule 13D filings since at least 2011, failing to
9    disclose through a Schedule 13D that Davis was in a position to change or influence control of
10    Cyanotech and that Davis was a part of a "group" with RSF exercising control of 33% of the
11    outstanding shares of Cyanotech.

12    99.    RSF has made false and misleading representations through its securities
13    filings, including by failing to disclose that it was part of a "group" with Davis exercising
14    control of 33% of the shares of Cyanotech.

15    100.    The misrepresented or omitted facts were material in that they affected the mix
16    of information available to the market and a reasonable investor would have considered the
17    information important in making an investment decision.

18    101.    Davis knew that his representations and omissions were false and incomplete at
19    the time he made his securities filings and at the time he continued to vote his shares as a
20    block with RSF.  Davis acted with the intent to deceive potential investors in Cyanotech or
21    with reckless disregard for their rights and interests.

22    102.    Cyanotech justifiably relied on the representations of Davis and RSF and as a
23    result filed proxy statements that contained material misstatements about the beneficial
24    ownership of Cyanotech, further resulting in Meridian continuing to increase its stake in
25    Cyanotech.

26    103.    Meridian relied upon the misrepresentations and omissions of Davis and RSF
27    as noted herein, including the material misstatements in the Cyanotech proxy statements that
28    resulted from the material misstatements of Davis and RSF, in purchasing securities of

- 21 -

1  Cyanotech on the following dates:  June 6, 12, 13, 16, 19, 24, 26, 27and 30, 2014; July 3, 7, 8,

2  9, 10, 11, 14, 15, 16, 17, 18, 21, 22, 23, 24 and 28, 2014; August 1, 8, 15, 19, 21, 22, 25, 26,

3  27, 28 and 29, 2014; September 2, 17, 19, 26 and 30, 2014; October 1, 3, 14, 16, 17, 23, 24,

4  27 and 30, 2014; November 3, 4, 5, 7, 10, 11, 12, 13, 17, 20, 21 and 24, 2014; December 1, 2,

5  3, 5, 9, 10, 11, 12, 15, 16, 17, 19, 22, 23, 24, 30 and 31, 2014; January 5, 6, 7, 8, 9, 13, 14, 15,

6  16, 21, 22, 23, 27, 28, 29 and 30, 2015; February 2, 3, 4, 6, 10, 12, 13, 17 and 23, 2015;

7  March 2, 6, 9, 10 and 12, 2015; April 6, 15, 16, 17, 20, 21, 24 and 27, 2015; May 6, 27 and

8  29, 2015; June 5, 8, 9, 10, 11, 12, 16, 17 and 25, 2015; July 9, 22, 27 and 29, 2015; August 4,

9  10, 11, 12, 20 and 21, 2015; October 7, 12 and 13, 2015; December 7 and 29, 2015; January 4,

10  5, 6, 7, 14, 19 and 20, 2016; February 8, 11, 12, 17, 25, 26 and 29, 2016; March 3, 4, 16, 17,

11  18, 21, 22 and 23, 2016; and April 1, 4 and 5, 2016.

104.  Meridian has been damaged as a result of the conduct of Davis in that it was enticed to purchase stock in Cyanotech even though it was controlled by Davis and RSF with over a 30% stake in the Company and the stock it purchased was worth materially less than the amount Meridian paid therefor.

**FIFTH CLAIM FOR RELIEF**

**(Breach of Fiduciary Duties—Chairman Davis)**

105.  Meridian incorporates the averments contained in Paragraphs 1 through 104 as though fully stated herein.

106.  As an officer of Cyanotech, Davis had a fiduciary duty, including a duty of loyalty and care, requiring Davis to maintain, in good faith, the best interests of Cyanotech and its shareholders over anyone else's interests, including his own.

107.  In failing to file Schedule 13D disclosures, and filing incomplete, misleading, and untimely Schedule 13G disclosures, and failing to file corrective SEC filings pursuant to 17 C.F.R. § 240.12b-20, Davis breached his fiduciary duties of care and loyalty by engaging in intentional misconduct, fraud, and a knowing violation of the law for the purpose of obscuring his controlling share of Cyanotech's voting shares he holds in association with RSF

11644-01/1697588.doc
4842-7970-0017.17

1   in order to avoid subjecting these controlling shares to a vote of Cyanotech's stockholders as

2   required by Nevada law.

3       108.    Cyanotech justifiably relied upon the representations of Davis and as a result

4   filed Proxy statements that contained material misstatements about his beneficial ownership of

5   Cyanotech, exposing Cyanotech to significant liability from private securities lawsuits and

6   SEC enforcement actions.

7       109.    Cyanotech has been damaged by the conduct of Davis through exposure to

8   private securities lawsuits and SEC enforcement actions.

9       110.    Davis has used these controlling shares to damage Cyanotech by pursuing an

10  agenda furthering his own interests over those of Cyanotech and its shareholders by:

11          a.      Appointing Mr. Vied to the board to create a board majority that

12                  aligns with Davis' interests over those of Cyanotech or its

13                  shareholders;

14          b.      Taking personal control of Cyanotech's business activities,

15                  including changing the Company's strategy, personally

16                  changing the job responsibilities and reporting assignments of

17                  people working within the Company, and making unilateral

18                  changes to the Company's operating plan; and

19          c.      Replacing Cyanotech's corporate counsel with his personal

20                  legal counsel loyal to Davis' interests over those of Cyanotech

21                  and its shareholders.

22          d.      Appointing himself to Cyanotech's audit committee despite

23                  being ineligible to serve thereon.

24      111.    Cyanotech has endured damages in an amount to be proven at trial as a result

25  of Davis' breach of fiduciary duty.

26                              **PRAYER FOR RELIEF**

27          WHEREFORE, Meridian prays for judgment against Defendants under its Claims for

28  Relief as follows:

11644-01/1697588.doc
4842-7970-0017.17

a.      Declaratory and injunctive relief as specifically set forth and requested in the First, Second, and Third Claims for Relief as outlined above;

b.      Declaratory judgment that the actions taken by the Board of Directors in meetings held without providing adequate notice to two of its board members in violation of Cyanotech's bylaws are without legal effect;

c.      Damages for the violation by Davis and RSF of Rule 10b-5 as alleged in the Fourth Claim for Relief;

d.      Damages for Davis' breach of his fiduciary duties to Cyanotech and its shareholders through his intentional misconduct, fraud, and knowing violation of the law as alleged in the Fifth Claim for Relief;

e.      Costs and reasonable attorneys' fees as allowed by law; and

f.      Such other and further relief as the Court deems just or equitable in this case.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and LR 38-1, Meridian hereby demands a trial by jury of all claims and issues triable as of right by jury.

DATED this 24th day of May, 2016.

**HOLLEY DRIGGS WALCH**
**FINE WRAY PUZEY & THOMPSON**


_____/s/ James D. Boyle_____
JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
HANNAH S. GOODWIN, ESQ.
Nevada Bar No. 13878
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

**KUTAK ROCK LLP**

BRIAN C. BUESCHER, ESQ.
PATRICK B. GRIFFIN, ESQ.
1650 Farnam Street
Omaha, Nebraska 68102

*Pro Hac Vice Applications Forthcoming*

*Attorneys for Plaintiff Meridian OHC Partners, LP*

- 24 -

1

## **INDEX OF EXHIBITS**

2

      A.      May 6, 2016 Letter from Meridian OHC Partners LP to Cyanotech Corporation

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11644-01/1697588.doc
4842-7970-0017.17