JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
E-mail: jboyle@nevadafirm.com
HANNA S. GOODWIN, ESQ.
Nevada Bar No. 13878
E-mail: hgoodwin@nevadafirm.com
HOLLEY DRIGGS, WALCH
FINE WRAY PUZEY & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:   702/791-0308
Facsimile:    702/791-1912

BRIAN C. BUESCHER, ESQ. (Admitted PHV)
Brian.Buescher@KutakRock.com
PATRICK B. GRIFFIN, ESQ. (Admitted PHV)
Patrick.Griffin@KutakRock.com
KUTAK ROCK LLP
1650 Farnam Street
Omaha, Nebraska 68102
Telephone:   402/346-6000
Facsimile:    402/346-1148

*Attorneys for Plaintiff Meridian OHC Partners, LP*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MERIDIAN OHC PARTNERS, LP,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL A. DAVIS, an individual; and RUDOLF STEINER FOUNDATION, INC., d/b/a RSF SOCIAL FINANCE, a New York corporation,<br><br>Defendants. | CASE NO.:   2:16-cv-01161-JAD-CWH<br><br>**SECOND AMENDED COMPLAINT**<br><br>**(JURY DEMAND REQUESTED)** |

Plaintiff Meridian OHC Partners, LP ("Meridian"), pursuant to the Federal Rules of Civil Procedure, and in particular F.R.C.P. 8(a) and 15(a)(2) (per leave of Court granted by Order dated January 23, 2017 (*see* Dkt. No. 64)), hereby sets forth its Second Amended Complaint stating and alleging as follows for its claims for relief against Michael A. Davis and the Rudolf Steiner Foundation, Inc., d/b/a RSF Social Finance ("RSF"):

- 1 -

11644-01/1841394

## I. THE PARTIES

1. Meridian is an investment firm specializing in small public companies. Over the past 14 years, Meridian's principals have made material investments in more than 30 such businesses. Meridian's business model involves taking large stakes in companies that are significantly undervalued by the market and working collaboratively with such companies to create or restore value. Meridian is Cyanotech's third largest stockholder, with a 13% ownership position, and was a stockholder at the times of the transactions complained of. Meridian's partners are citizens of Connecticut, Florida, Texas and Wisconsin.

2. Cyanotech is a production company, producing nutritional supplements including BioAstin®, Natural Astaxanthin, and Hawaiian Spirulina Pacifica®. Cyanotech is incorporated in the State of Nevada. Cyanotech does business in Nevada directly through product sales to customers in Nevada. Cyanotech's principal place of business is at the Natural Energy Lab of Hawaii on the Island of Hawaii.

3. Michael A. Davis ("Davis") has been the Chairman of Cyanotech's Board of Directors since 2011 and became Cyanotech's largest stockholder in 2002 when he acquired a 19.6% stake in the Company. According to a Schedule 13G filed by Davis on February 5, 2016, Davis claims beneficial ownership of approximately 19.6% of Cyanotech. Upon information and belief, Davis is a citizen of the State of California.

4. RSF is a charitable, not-for-profit corporation organized in New York, which is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. RSF provides capital to non-profit and for-profit social enterprises addressing key issues in the areas of food and agriculture, education and the arts, and ecological stewardship. According to Cyanotech's most recent proxy statement, RSF is the second largest stockholder in Cyanotech, holding an approximately 13.5% stake. RSF's principal place of business is in California.

## II. JURISDICTION AND VENUE

5. This Court has federal-question jurisdiction over this action under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa(a) because this action concerns violations of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*

11644-01/1841394

6. The Court has personal jurisdiction over the Defendant Davis and the Defendant RSF, among other reasons, pursuant to 15 U.S.C. § 78aa(a) as the claims asserted against them arise under the Securities Exchange Act of 1934 and each have sufficient contacts with the United States for purposes of appropriate service of process pursuant thereto, and each were served summons and complaint in accordance with its terms.

7. This Court is the proper venue for this action under 28 U.S.C. § 1391 and 15 U.S.C. § 78aa(a) because acts constituting a violation of the Securities Exchange Act of 1934 occurred within this district and because Davis and RSF are subject to personal jurisdiction in this district for claims asserted under the Act. In any event, objections as to venue have been waived.

### III. FACTUAL BACKGROUND

**A.   Section 13(d) of the Exchange Act**

8. Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act") requires a person to file statements of beneficial ownership when such person, either alone or as part of a group, becomes the beneficial owner of 5% or more of a class of securities registered under the Exchange Act. Cyanotech's common stock is registered under the Exchange Act.

9. Section 13(d) is implemented by regulations adopted by the Securities and Exchange Commission ("SEC"), including Rule 13d-1, codified at 17 C.F.R. § 240.13d-1, which generally requires persons who are required to file reports under Section 13(d) to do so on a long-form Schedule 13D, and to do so within 10 days after the date on which they become a 5% stockholder.

10. Certain passive investors may report on a short-form Schedule 13G instead of a long-form Schedule 13D. In order to qualify for use of the short-form Schedule 13G, such person must (i) have acquired securities in the ordinary course of his business and not with the purpose or with the effect of changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having such purpose or effect; and (ii) be an institutional investor of the type described in Rule 13d-1. In addition, Schedule 13G is not

available to any person who is the beneficial owner of 20% or more of the applicable class of securities. A Schedule 13G must be filed within 45 days after the end of the calendar year in which the person became obligated to file, and amendments must be filed annually within 45 days after the end of the calendar year to report any changes. A person who has acquired the securities with any purpose, or with the effect, of changing or influencing the control of the issuer is not eligible to file on Schedule 13G. *See* Rule 13d-1(b)(1)(i).

11. Section 13(d)(3) of the Exchange Act addresses group membership for purposes of Section 13(d) and provides that "[w]hen two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection." 15 U.S.C. § 78m(d)(3). The SEC regulation under Section 13(d)(3) further provides that "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership . . . of all equity securities of that issuer beneficially owned by any such persons." Rule 13d-5(b)(1), codified at 17 C.F.R. § 240.13d-5(b)(1).

### *1.    Davis Violated Section 13(d) by Failing to File on Schedule 13D Because He Has the Ability to Influence and Control Cyanotech*

12. Davis is the Company's single largest stockholder. He controls at least 19.6% of the stock of the Company. Davis reported his beneficial ownership on Schedule 13G from 2002 to 2016. Davis joined the Company's board of directors in March 2003 and became its chairman of the board in 2011. As a result of his position on Cyanotech's ultimate governing authority, Davis is in a position where he could change or influence control of Cyanotech. As a result, Davis is not eligible to file on Schedule 13G and is required to file on Schedule 13D.

13. Even if Davis was originally eligible to file on Schedule 13G, he was required to change his filing to a Schedule 13D once he obtained the ability to influence control of the Company no later than in March of 2003 when he joined the Board. According to Rule 13d-1(e), any person who previously reported on Schedule 13G must file a Schedule 13D

11644-01/1841394

within 10 days after such person holds securities with the purpose or effect of changing or influencing control of the issuer.

14.  In addition, upon information and belief, Davis has in fact exercised control over the Company by, among other things, taking control of Cyanotech's business activities, including making unilateral changes to the Company's strategies and operations; terminating several of the Company's chief executive officers and making changes to the Company's senior staff, including Brent Bailey, who had directed the company's retail expansion into Astaxanthin market and resigned under pressure; personally changing the job responsibilities and reporting assignments of people working within the Company; and deciding who should be added to the Company's board of directors, including as more particularly detailed below:

  a.  Since 2007, the Company has had five CEOs.  Based on information and belief, Davis orchestrated the departures of these CEOs because they attempted to run the Company for the benefit of all stockholders rather than the personal desires of Davis;

  b.  Based on knowledge and belief, Davis replaced Cyanotech's previous outside law firm with a law firm that does a substantial amount of legal work for himself and entities he controls, and is therefore primarily loyal to Davis rather than the Company;

  c.  As chairman of Cyanotech's board of directors, Davis has regularly called meetings of the board of directors without providing required notice to all of the directors.  In so doing, Davis excluded two of Cyanotech's directors, Gerald Cysewski and Bailey, from these meetings; and

  d.  In January 2015, David L. Vied was appointed to the Cyanotech board at the urging of Davis.  Mr. Vied is an executive recruiter for a national executive recruiting firm who recruited Mr. Bailey to be Cyanotech's CEO.  In March 2016, Mr. Vied

provided the deciding vote (the fourth vote necessary for a majority of a six-person board) for the forced resignation of Mr. Bailey. Shortly after this vote, Mr. Vied's executive recruiting firm was hired, at the direction of Davis, to recruit Mr. Bailey's successor. Mr. Vied thus voted on a matter in which he had a material conflict of interest.

15. In response to a demand by Meridian dated May 6, 2016, on or about May 17, 2016, the Cyanotech Board of Directors appointed a Special Committee comprised of allegedly independent Board members (the "Special Committee") to investigate and consider, among other issues, whether Davis is required to file a Schedule 13D, rather than a Schedule 13G, as he had done since 2002 (though Cyanotech did not provide notice thereof to Meridian until June 8, 2016). The members of the Special Committee constituted a majority of the full Board of Directors.

16. On September 2, 2016, Cyanotech filed a Form 8-K in which Cyanotech reported the findings of the Special Committee, which concluded, in part, "Mr. Davis should be filing his reports pursuant to Section 13 of the Exchange Act … on Schedule 13D, rather than on the short form Schedule 13G." The Special Committee further concluded "Mr. Davis made late Schedule 13G filings (in 2004, 2005, 2011, 2011, 2014 and 2015) and failed to file reports pursuant to Section 13 in 2006, 2008 2009 and 2012," and that reports Davis filed in 2002, 2011 and 2013 contained "inaccuracies" the Special Committee concluded were "immaterial."

17. Davis eventually filed a Schedule 13D on September 20, 2016, but only after (i) Meridian asserted its Demand and filed its Complaint herein; (ii) the Special Committee determined "Mr. Davis should be filing his reports pursuant to Section 13 of the Exchange Act … on Schedule 13D, rather than on the short form Schedule 13G;" and (iii) the Board adopted the recommendations of the Special Committee. Davis amended his Schedule 13D on December 20, 2016.

18. The Schedule 13D Davis filed is inaccurate in at least two material respects:

a. At Item 4, Davis represents he "acquired shares of Common Stock for investment purposes." Said statement is false in that Davis has acquired some or all of his shares for purposes of securing and exercising control and influence over Cyanotech; and

b. At Item 6, Davis "expressly disclaims that a 'group' within the meaning of Section 13(d)(3) of the [Exchange] Act exists between [Davis] and RSF." Said statement is false as a "group" within the meaning of Section 13(d)(3) in fact exists between Davis and RSF.

### 2. *Davis and RSF Violated Section 13(d) Because They Are Part of an Undisclosed Group*

19. Davis has a very close relationship with RSF. When the Company's former CEO joined the Company in 2011, Davis took him to visit RSF's offices on his very first day on the job. Based on information and belief, Davis was responsible for RSF acquiring every share that RSF currently holds in Cyanotech. This was accomplished through a series of stock transfers by Davis and entities he controls, and via a negotiated block trade that Davis facilitated and financed.

20. RSF acquired most of its Cyanotech shares in 2011. According to the Company's SEC reports, Cyanotech began that year with a different large stockholder, VitaeLab AS, a Norwegian vitamin and supplements company, that based on knowledge and belief was, for some time, a large bulk customer of the Company. When VitaeLab acquired a 5% interest in Cyanotech in 2008, VitaeLab disclosed it was an active investor and might seek to influence the Company and its board of directors. Accordingly, it reported its investment on Schedule 13D. Later in 2008, VitaeLab amended its Schedule 13D to report that its ownership interest in Cyanotech had risen materially to 9.7%, the level at which it remained thereafter. Based on information and belief, VitaeLab requested a seat on Cyanotech's board of directors but the Company rejected this request.

21. Based on information and belief, VitaeLab called the Company's then-CEO in 2011 and told the then-CEO it was interested in selling its 9.7% stake and asked whether the CEO knew of any interested buyers. Based on information and belief, the then-CEO reported the substance of this call to Davis. According to RSF's Schedule 13G filed on May 27, 2011 (reporting RSF's acquisition) and VitaeLab's last amendment to its Schedule 13D filed on May 31, 2011 (reporting VitaeLab's sale), RSF purchased VitaeLab's shares on May 17, 2011. According to RSF's 2011 IRS annual report on Form 990, Davis gave RSF a $2.5 million cash donation in 2011, which was sufficient to fund RSF's entire purchase. A review of other available RSF Form 990s indicates the magnitude of this $2.5 million cash donation was unique and not repeated in other years, either before or since. Based on information and belief, RSF used the cash donation from Davis to purchase VitaeLab's stake in the Company.

22. Davis has periodically made transfers of additional shares of Cyanotech common stock to RSF. Davis did not make required Form 4 filings with the SEC to report many of these transfers. Accordingly, it is necessary to look to other sources of information to identify the timing and amounts of these transfers. The first transfer for which evidence has been obtained (RSF's IRS Form 1990 for 2011) involved 76,998 shares transferred on February 17, 2011 from Davis' Skywords Foundation. Another transfer of 30,769 shares was made in 2014 (and known to have been made to RSF because RSF belatedly made its required Form 4 filing). Davis is believed to have transferred another 150,036 shares of Cyanotech stock to RSF in 2010, but neither Davis nor RSF reported this transaction.

23. Davis regularly added to his Cyanotech holdings at times coinciding with his donations of Cyanotech shares to RSF. Between February 14, 2011 and June 2, 2011, for example, Davis acquired 100,000 shares of Cyanotech stock in the open market, thus quickly recouping the 76,998 shares Davis donated to RSF at the beginning of that period. Later, as Davis disclosed in his February 20, 2014 Form 4, Davis acquired 50,000 shares of Cyanotech stock in open market purchases on February 19, 2014, one day after he transferred 30,769 shares of Cyanotech stock to RSF. Shortly after these transactions, Davis reported his ownership stake in Cyanotech to be 19.8% of the outstanding Company stock. Were it not for

11644-01/1841394

the transfer to RSF immediately prior to Davis' share purchase, Davis' ownership interest in Company stock would have exceeded 20%.

24. According to RSF's SEC filings, Cyanotech is the only public company in which RSF has ever held a 5% or greater ownership position, and Cyanotech is likely the only holding RSF ever has held for five years. According to its SEC filings, RSF has never sold a single share of Cyanotech common stock since it first became a holder of such securities more than five years ago. Based on its 2011 IRS Form 990, RSF's stake in Cyanotech comprised 30% to 40% of the value of its portfolio of publicly traded securities.

25. The investment operations of foundations such as RSF are governed by the so-called "prudent investor rule," which requires these entities to maintain diversified investment portfolios, protect the portfolio's overall liquidity and avoid investing large portions of the portfolio in speculative investments. Notwithstanding the "prudent investor rule," RSF has held 30% to 40% of its investment portfolio in a non-income-producing, illiquid microcap company for more than five years, and continues to do so.

26. On August 15, 2016, Cyanotech filed a Form 10-Q in which it reported its preliminary findings of the Special Committee regarding the question of whether Davis and RSF are a "group" within the meaning of Section 13d(3) of the Exchange Act and Rule 13d-5(b)(1). In its Form 10-Q, Cyanotech reported, among other things, that "[t]he shares held by RSF were originally donated [to RSF] by a foundation affiliated Mr. Davis or acquired from the proceeds of donations made by that foundation." More particularly, Cyanotech reported "the shares of Company Common Stock owned by RSF are held by RSF in an endowment fund for the benefit of Ginungagap Foundation, a non-profit corporation incorporated in 2004 for the stated purpose of supporting RSF and the Tides Foundation. The terms of the written agreement between Ginungagap and RSF regarding the endowment permit Ginungagap to make non-binding recommendations to RSF with regards to the investment of the endowment fund and request grants from that fund to Ginungagap, but do not provide Ginungagap the authority to vote or dispose of the shares held by RSF. Pursuant to the terms of the bylaws of Ginungagap, two of the directors of Ginungagap are appointed by RSF and one is appointed by

Skywords Family Foundation, a charitable foundation affiliated with Mr. Davis. Mr. Davis serves as the president of Ginungagap and as the director appointed by Skywords Family Foundation."

27. Davis and RSF "act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership . . . of all equity securities of that issuer beneficially owned by any such persons." By virtue of their acting as a "group" within the meaning of Section 13d(3) of the Exchange Act and Rule 13d-5(b)(1), RSF and Davis each are deemed to have acquired beneficial ownership of the entire 33% position and therefore must file a Schedule 13D, rather than a Schedule 13G.

28. In its September 2, 2016, Form 8-K, Cyanotech reported on the findings of the Special Committee in consideration of whether Davis and RSF are a "group" within the meaning of Section 13d(3) of the Exchange Act and Rule 13d-5(b)(1). In this context, Cyanotech reported "[t]he Special Committee has not found sufficient information to conclude that a "group" exists under Section 13(d) of the Exchange Act." The Special Committee noted, however, "that certain of the facts relating to the relationship between Mr. Davis and RSF could be consistent with the existence of a "group" ... [and] recommended that Mr. Davis consider whether or not a "group" exists" and that he "include additional disclosures in his filings under the Exchange Act regarding the relationship between Mr. Davis and RSF regarding shares for the Company's common stock." Notably, the Special Committee did <u>not</u> conclude Davis and RSF did not constitute a "group" within the meaning of Section 13d(3) of the Exchange Act and Rule 13d-5(b)(1).

29. Davis, Ginungagap and RSF have acted together in other contexts. In 2000, RSF collaborated with two other nominally charitable entities to form a "supporting organization" named Yggdrasil Land Foundation ("Yggdrasil"). Upon information and belief, RSF reserved the right to appoint at least two members of the Board of Trustees of Yggdrasil. Presently, the Chairman of the Board and the Chief Operating Officer of RSF serve as RSF "appointees" to the Yggdrasil Board of Trustees, and RSF's Vice President of Organizational

Culture serves as an "at large" member of Yggdrasil's Board of Trustees. Also in 2000, Yggdrasil acquired by donation an 87 acre farm in Mendocino California now known as Filigreen Farm. Sometime after 2004, Ginungagap, under the control of Davis, created an entity known as Filigreen Farm LLC. Filigreen Farm LLC thereafter entered into a 30-year lease pursuant to which it operates Filigreen Farm.

30. On September 20, 2016, apparently in response to the Special Committee findings, Davis filed a Schedule 13D. The Schedule 13D Davis filed contains material inaccuracies as described in paragraph 18, supra, and such material inaccuracies have not been corrected despite the fact Davis amended his Schedule 13D on December 21, 2016.

31. RSF, for its part, has not filed a Schedule 13D as it is required to do given Davis and RSF constitute a "group" within the meaning of Section 13(d)(3) of the Exchange Act.

**B.  The Cyanotech Board Has Been Given Notice of The Foregoing Violations of Law and Has Refused Demand of Action**

32. Meridian informed the Cyanotech Board of the foregoing violations of law, among others, in a letter dated May 6, 2016. A copy of this letter is attached as Exhibit A.

33. In its May 6, 2016 letter, Meridian provided facts illustrating Davis' and RSF's failure to comply with Federal securities laws by failing to file Schedules 13D.

34. In its September 2, 2016 Form 8-K, Cyanotech made clear it would not take action against Davis or RSF for their failure to file appropriate and accurate Schedules 13D or against Davis for providing materially false and misleading information to Cyanotech that was included in its SEC filings.

35. In a follow-on letter dated September 9, 2016 from counsel for Special Committee to Meridian, expressly speaking to Meridian's "Demand for Action," counsel confirmed that the "Board of Directors ... adopted the recommendation of the Special Committee and passed a resolution electing not to pursue the actions you requested be taken in the Demand Letter ... . As such, the Board of Directors has formally refused your demand."

36. Rather than take action in consideration of whether Davis and RSF constitute a "group" within the meaning of Section 13(d)(3) of the Exchange Act, and hence should file Schedules 13D accurately acknowledging and, in the case of Davis not disclaiming, "group" status, the Board adopted the recommendation of the Special Committee "that Mr. Davis consider whether or not a "group" exists," without direction, oversight or consequence.

37. The Board refused to take action in consideration of whether Davis and RSF constitute a "group" within the meaning of Section 13(d)(3) of the Exchange Act, and hence should file Schedules 13D. Instead, the Board merely deferred the issue to Davis, the party most interested in the issue and subject to obvious conflict of interest, for his consideration as to whether or not a "group" exists," without direction, oversight or consequence. As a result, the failure of Davis and RSF to file accurate Schedules 13D, and the harm to Cyanotech stockholders, including Meridian, caused thereby will continue unless Davis and RSF are compelled by court order to file accurate Schedules 13D.

## IV. CLAIM FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Declaratory Judgment and Injunctive Relief under the Exchange Act against Davis and RSF)**

38. Meridian incorporates the averments contained in Paragraphs 1 through 37 as though fully stated herein.

39. Davis owns greater than 5% of the shares of Cyanotech and has the ability to influence or control, and does in fact influence or control, Cyanotech.

40. Davis, with a 19.5% stake in Cyanotech, and RSF, with a 13.5% stake in Cyanotech, together own and control 33% of the outstanding stock of Cyanotech.

41. Davis made gifts of Cyanotech stock to RSF and gave Cyanotech $2.5 million that RSF used to purchase Cyanotech shares in furtherance and evidence of an agreement between Davis and RSF to acquire and hold not less than 33% of the outstanding stock of Cyanotech.

42. Davis and RSF constitute a "group" pursuant to Rule 13d-5 because Davis and RSF have agreed and acted together for the purpose of acquiring, holding, voting or disposing of equity securities of Cyanotech within the meaning of 17 C.F.R. § 240.13d-5(b)(1).

43. Davis' and RSF's failure to fully and accurately make the disclosures required by Section 13(d) deprives Meridian and the other Cyanotech shareholders of the protections afforded by that Section and its implementing rules. More particularly, Meridian has suffered irreparable harm in failing to receive information mandated by Section 13(d) in at least the following material respects:

    a. Meridian has been denied relevant information required to make informed investment decisions related to corporate governance issues, including its relative ownership position vis-à-vis other individual and group holders of Cyanotech stock;

    b. Meridian has been denied relevant information required to evaluate Davis' and RSF's purposes in forming the undisclosed group alleged herein and the potential impact the formation of that group may have on Cyanotech and Meridian's stock holdings;

    c. Meridian has been denied relevant information required to accurately evaluate the true value of its holdings of Cyanotech stock;

    d. Meridian has been denied relevant information required to make informed investment decisions as to whether to acquire, hold or dispose of Cyanotech stock, and how to exercise its voting rights in the Cyanotech stock it holds; and

    e. Meridian has been deprived of representation by a Board elected with full and complete information an ordinary reasonable holder of Cyanotech stock would consider important in voting for and electing a Board, a fact compounded by Cyanotech's

11644-01/1841394

failure to disclose all relevant results of the Special Committee investigation prior to the 2016 meeting of stockholders, to the extent then known.

44. Irreparable injury to Meridian will persist if Davis and RSF are not compelled to file, and in fact file, accurate Schedules 13D.

45. The issues outlined herein are an actual case in controversy within the jurisdiction of this Court.

46. Meridian seeks a declaration of this Court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, finding as follows:

    a. That Davis owns greater than 5% of the shares of Cyanotech, has the power to and does in fact control and influence Cyanotech and therefore is required to file Schedule 13D;

    b. That Davis and RSF constitute a "group" pursuant to Rule 13d-5 that has acquired beneficial ownership for the purposes of Section 13(d) and 13(g) of the Exchange Act;

    c. That Davis and RSF are required by Rule 13d-1(c)(3) and federal securities laws to file truthful and complete Schedules 13D as members of a "group" pursuant to federal law;

    d. That Meridian is entitled to preliminary and permanent injunctive relief (i) ordering Davis and RSF to file truthful and complete Schedules 13D pursuant to federal law; and (ii) restraining Davis and RSF from voting any of the shares of Cyanotech they control unless and until they file truthful and complete Schedules 13D pursuant to federal law; and

    e. Any other relief the Court finds fair and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Meridian prays for judgment against Defendants under its Claim for Relief as follows:

    a.    Declaratory and injunctive relief as specifically set forth and requested in the First Claim for Relief as outlined above;

    b.    Costs and reasonable attorneys' fees as allowed by law; and

    c.    Such other and further relief as the Court deems just or equitable in this case.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and LR 38-1, Meridian hereby demands a trial by jury of all claims and issues triable as of right by jury.

DATED this 13th day of February, 2017.

**HOLLEY DRIGGS WALCH**
**FINE WRAY PUZEY & THOMPSON**


        /s/ James D. Boyle
JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
HANNAH S. GOODWIN, ESQ.
Nevada Bar No. 13878
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

**KUTAK ROCK LLP**

BRIAN C. BUESCHER, ESQ.
PATRICK B. GRIFFIN, ESQ.
1650 Farnam Street
Omaha, Nebraska 68102

*Admitted Pro Hac Vice*

*Attorneys for Plaintiff Meridian OHC Partners, LP*

11644-01/1841394

## VERIFICATION

I, Scott A. Shuda, upon my oath state that I am the Managing Director of TSV Investment Partners, LLC, general partner of Meridian OHC Partners, LP. I have read the foregoing Second Amended Complaint and the facts contained therein are true and correct to the best of my personal knowledge.

MERIDIAN OHC PARTNERS, LP

BY: TSV INVESTMENT PARTNERS, LLC, its General Partner

By: _____
Scott A. Shuda, Managing Director

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that on the 13th day of February, 2017, I caused the document entitled **SECOND AMENDED COMPLAINT**, to be served as follows:

| Attorneys of Record | Parties Represented | Method of Service |
|---|---|---|
| I-Che Lai, Esq.<br>WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP<br>300 South Fourth Street, 11th Floor<br>Las Vegas, Nevada 89101<br><br>Michael P. McCloskey, Esq.<br>WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP<br>655 West Broadway, Suite 900<br>San Diego, California 92101 | Defendant Rudolf Steiner Foundation, Inc. d/b/a RSF Social Finance | ☐ Personal Service<br>■ Email/E-File<br>☐ Fax Service<br>☐ Mail Service |
| Dennis L. Kennedy, Esq.<br>Sarah E. Harmon, Esq.<br>BAILEY KENNEDY<br>8984 Spanish Ridge Avenue<br>Las Vegas, Nevada 89148-1302<br><br>James G. Kreissman, Esq.<br>Stephen P. Blake, Esq.<br>SIMPSON THATCHER & BARTLETT LLP<br>2475 Hanover Street<br>Palo Alto, California 94304 | Attorneys for Defendant Cyanotech Corporation | ☐ Personal Service<br>■ Email/E-File<br>☐ Fax Service<br>☐ Mail Service |
| Alex L. Fugazzi, Esq.<br>V.R. Bohman, Esq.<br>SNELL & WILMER LLP<br>3883 Howard Hughes Parkway<br>Suite 1100<br>Las Vegas, Nevada 89169<br><br>Timothy P. Crudo, Esq.<br>Lynsdsey M. Marcelino, Esq.<br>COBLENZ PATCH DUFFY & BASS LLP<br>One Montgomery Street, Suite 3000<br>San Francisco, California 94104-550 | Attorneys for Defendant Michael A. Davis | ☐ Personal Service<br>■ Email/E-File<br>☐ Fax Service<br>☐ Mail Service |

_/s/ [signature]_
An employee of Holley Driggs Walch
Fine Wray Puzey & Thompson

11644-01/1841394