JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
E-mail:  jboyle@nevadafirm.com
HANNA S. GOODWIN, ESQ.
Nevada Bar No. 13878
E-mail:  hgoodwin@nevadafirm.com
HOLLEY DRIGGS, WALCH
FINE WRAY PUZEY & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:      702/791-0308
Facsimile:      702/791-1912

BRIAN C. BUESCHER, ESQ. (Admitted PHV)
Brian.Buescher@KutakRock.com
PATRICK B. GRIFFIN, ESQ. (Admitted PHV)
Patrick.Griffin@KutakRock.com
KUTAK ROCK LLP
1650 Farnam Street
Omaha, Nebraska 68102
Telephone:      402/346-6000
Facsimile:      402/346-1148

*Attorneys for Plaintiff Meridian OHC Partners, LP*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MERIDIAN OHC PARTNERS, LP,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL A. DAVIS, an individual; and RUDOLF STEINER FOUNDATION, INC., d/b/a RSF SOCIAL FINANCE, a New York corporation,<br><br>Defendants. | CASE NO.:    2:16-cv-01161-JAD-CWH<br><br>**THIRD AMENDED COMPLAINT**<br><br>**(JURY DEMAND REQUESTED)** |

Plaintiff Meridian OHC Partners, LP ("Meridian"), pursuant to the Federal Rules of Civil Procedure, and in particular F.R.C.P. 8(a) and 15(a)(2) (per leave of Court granted by Order dated March 30, 2017, (*see* Dkt. No. 74)) hereby sets forth its Third Amended Complaint stating and alleging as follows for its claims for relief against Michael A. Davis and the Rudolf Steiner Foundation, Inc., d/b/a RSF Social Finance ("RSF"):

- 1 -

## I. THE PARTIES

1.       Meridian is an investment firm specializing in small public companies.  Over the past 14 years, Meridian's principals have made material investments in more than 30 such businesses. Meridian's business model involves taking large stakes in companies that are significantly undervalued by the market and working collaboratively with such companies to create or restore value. Meridian is the third largest stockholder of Cyanotech Corporation ("Cyanotech"), with a 13% ownership position, and was a stockholder at the times of the transactions complained of.  Meridian's partners are citizens of Connecticut, Florida, Texas and Wisconsin.

2.       Cyanotech is a production company, producing nutritional supplements including BioAstin®, Natural Astaxanthin, and Hawaiian Spirulina Pacifica®. Cyanotech is incorporated in the State of Nevada.  Cyanotech does business in Nevada directly through product sales to customers in Nevada.  Cyanotech's principal place of business is at the Natural Energy Lab of Hawaii on the Island of Hawaii.

3.       Michael A. Davis ("Davis") became Cyanotech's largest stockholder in 2002 when he acquired 19.6% of the outstanding shares of Cyanotech common stock.  Davis has been a member of Cyanotech's Board of Directors (the "Board") since 2003, and Chairman of the Board since 2011. According to a Schedule 13D Davis filed on March 17, 2017 (the "Second Amended Schedule 13D"), Davis claims beneficial ownership of approximately 16.8% of the outstanding shares of Cyanotech common stock.  Upon information and belief, Davis is a citizen of the State of California.

4.       RSF is a charitable, not-for-profit corporation organized in New York, which is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code.  RSF provides capital to non-profit and for-profit social enterprises addressing key issues in the areas of food and agriculture, education and the arts, and ecological stewardship.  According to the Second Amended Schedule 13D, RSF is the second largest stockholder in Cyanotech, holding 16.2% of the outstanding shares of Cyanotech common stock.  RSF's principal place of business is in California.

11644-01/1867314

5.      Together, Davis and RSF own and/or control 33% of the outstanding shares of Cyanotech common stock.

## II. JURISDICTION AND VENUE

6.      This Court has federal-question jurisdiction over this action under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa(a) because this action concerns violations of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*

7.      The Court has personal jurisdiction over the Defendant Davis and the Defendant RSF, among other reasons, pursuant to 15 U.S.C. § 78aa(a) as the claims asserted against them arise under the Securities Exchange Act of 1934 and each have sufficient contacts with the United States for purposes of appropriate service of process pursuant thereto, and each were served summons and complaint in accordance with its terms.

8.      This Court is the proper venue for this action under 28 U.S.C. § 1391 and 15 U.S.C. § 78aa(a) because acts constituting a violation of the Securities Exchange Act of 1934 occurred within this district and because Davis and RSF are subject to personal jurisdiction in this district for claims asserted under the Act.  In any event, objections as to venue have been waived.

## III. BACKGROUND

### A.      Section 13(d) of the Exchange Act

9.      Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act") requires a person to file statements of beneficial ownership when such person, either alone or as part of a group, becomes the beneficial owner of 5% or more of a class of securities registered under the Exchange Act.  Cyanotech's common stock is registered under the Exchange Act.

10.     Section 13(d) is implemented by regulations adopted by the Securities and Exchange Commission ("SEC"), including Rule 13d-1, codified at 17 C.F.R. § 240.13d-1, which generally requires persons who are required to file reports under Section 13(d) to do so on a long-form Schedule 13D, and to do so within 10 days after the date on which they become a 5% stockholder.

- 3 -

11.     Certain passive investors may report on a short-form Schedule 13G instead of a long-form Schedule 13D.  In order to qualify for use of the short-form Schedule 13G, such person must (i) have acquired securities in the ordinary course of his business and not with the purpose or with the effect of changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having such purpose or effect; and (ii) be an institutional investor of the type described in Rule 13d-1.  In addition, Schedule 13G is not available to any person who is the beneficial owner of 20% or more of the applicable class of securities.  A Schedule 13G must be filed within 45 days after the end of the calendar year in which the person became obligated to file, and amendments must be filed annually within 45 days after the end of the calendar year to report any changes.  A person who has acquired the securities with any purpose, or with the effect, of changing or influencing the control of the issuer is not eligible to file on Schedule 13G. *See* Rule 13d-1(b)(1)(i).

12.     Section 13(d)(3) of the Exchange Act addresses group membership for purposes of Section 13(d) and provides that "[w]hen two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection."  15 U.S.C.  § 78m(d)(3).   The SEC regulation under Section 13(d)(3) further provides that "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership . . . of all equity securities of that issuer beneficially owned by any such persons." Rule 13d-5(b)(1), codified at 17 C.F.R. § 240.13d-5(b)(1).

**B.     The Relationship Between Davis and RSF**

13.     Davis has a very close relationship with RSF.  When Cyanotech's former CEO joined Cyanotech in 2011, Davis took him to visit RSF's offices on his very first day on the job.  Based on information and belief, Davis was responsible for RSF acquiring every share that RSF currently holds in Cyanotech.  This was accomplished through a series of stock

- 4 -

transfers by Davis and entities he controls, and via a negotiated block trade that Davis facilitated and financed.

14. RSF acquired most of its Cyanotech shares in 2011. According to Cyanotech's SEC reports, Cyanotech began that year with a different large stockholder, VitaeLab AS, a Norwegian vitamin and supplements company, that based on knowledge and belief was, for some time, a large bulk customer of Cyanotech. When VitaeLab acquired a 5% interest in Cyanotech in 2008, VitaeLab disclosed it was an active investor and might seek to influence Cyanotech and its board of directors. Accordingly, it reported its investment on Schedule 13D. Later in 2008, VitaeLab amended its Schedule 13D to report that its ownership interest in Cyanotech had risen materially to 9.7%, the level at which it remained thereafter. Based on information and belief, VitaeLab requested a seat on Cyanotech's board of directors but Cyanotech rejected this request.

15. Based on information and belief, VitaeLab called Cyanotech's then-CEO in 2011 and told the then-CEO it was interested in selling its 9.7% stake and asked whether the CEO knew of any interested buyers. Based on information and belief, the then-CEO reported the substance of this call to Davis. According to RSF's Schedule 13G filed on May 27, 2011 (reporting RSF's acquisition) and VitaeLab's last amendment to its Schedule 13D filed on May 31, 2011 (reporting VitaeLab's sale), RSF purchased VitaeLab's shares on May 17, 2011. According to RSF's 2011 IRS annual report on Form 990, Davis gave RSF a $2.5 million cash donation in 2011, which was sufficient to fund RSF's entire purchase. A review of other available RSF Form 990s indicates the magnitude of this $2.5 million cash donation was unique and not repeated in other years, either before or since. Based on information and belief, RSF used the cash donation from Davis to purchase VitaeLab's stake in Cyanotech.

16. Davis has periodically made transfers of additional shares of Cyanotech common stock to RSF. Davis did not make required Form 4 filings with the SEC to report many of these transfers. Accordingly, it is necessary to look to other sources of information to identify the timing and amounts of these transfers. The first transfer for which evidence has been obtained (RSF's IRS Form 1990 for 2011) involved 76,998 shares transferred on

- 5 -

February 17, 2011 from Davis' Skywords Foundation. Another transfer of 30,769 shares was made in 2014 (and known to have been made to RSF because RSF belatedly made its required Form 4 filing). Davis is believed to have transferred another 150,036 shares of Cyanotech stock to RSF in 2010, but neither Davis nor RSF reported this transaction.

17.     Davis regularly added to his Cyanotech holdings at times coinciding with his donations of Cyanotech shares to RSF. Between February 14, 2011 and June 2, 2011, for example, Davis acquired 100,000 shares of Cyanotech stock in the open market, thus quickly recouping the 76,998 shares Davis donated to RSF at the beginning of that period. Later, as Davis disclosed in his February 20, 2014 Form 4, Davis acquired 50,000 shares of Cyanotech stock in open market purchases on February 19, 2014, one day after he transferred 30,769 shares of Cyanotech stock to RSF. Shortly after these transactions, Davis reported his ownership stake in Cyanotech to be 19.8% of the outstanding Company stock. Were it not for the transfer to RSF immediately prior to Davis' share purchase, Davis' ownership interest in Company stock would have exceeded 20%.

18.     According to RSF's SEC filings, Cyanotech is the only public company in which RSF has ever held a 5% or greater ownership position, and Cyanotech is likely the only holding RSF ever has held for five years. According to its SEC filings, RSF has never sold a single share of Cyanotech common stock since it first became a holder of such securities more than five years ago. Based on its 2011 IRS Form 990, RSF's stake in Cyanotech comprised 30% to 40% of the value of its portfolio of publicly traded securities.

19.     The investment operations of foundations such as RSF are governed by the so-called "prudent investor rule," which requires these entities to maintain diversified investment portfolios, protect the portfolio's overall liquidity and avoid investing large portions of the portfolio in speculative investments. Notwithstanding the "prudent investor rule," RSF has held 30% to 40% of its investment portfolio in a non-income-producing, illiquid microcap company for more than five years, and continues to do so.

**C.** **Davis Violated Section 13(d) from 2003 Through 2016 by Failing to File on Schedule 13D Given He Had the Ability to Influence and Control Cyanotech**

20.     Davis is Cyanotech's single largest stockholder.  He controls at least 16.8% of the outstanding shares of Cyanotech common stock.  Davis reported his beneficial ownership on Schedule 13G from 2002 through September 21, 2016 when Davis for the first time filed a Schedule 13D (the "Original Schedule 13D").  Davis joined Cyanotech's board of directors in or about March 2003 and became its chairman of the board in 2011.  As a result of his position on Cyanotech's ultimate governing authority, Davis was (and remains) in a position to change or influence control of Cyanotech.

21.     If Davis originally was eligible to file on Schedule 13G, he was required to change his filing to a Schedule 13D once he obtained the ability to influence control of Cyanotech no later than when he joined the Board in or about March 8, 2003.  According to Rule 13d-1(e), any person who previously reported on Schedule 13G must file a Schedule 13D within 10 days after such person holds securities with the purpose or effect of changing or influencing control of the issuer.

22.     In addition, upon information and belief, Davis has in fact exercised control over Cyanotech by, among other things, taking control of Cyanotech's business activities, including making unilateral changes to Cyanotech's strategies and operations; terminating several of Cyanotech's chief executive officers and making changes to Cyanotech's senior staff, including Brent Bailey, who had directed Cyanotech' retail expansion into Astaxanthin market and resigned under pressure; personally changing the job responsibilities and reporting assignments of people working within Cyanotech; and deciding who should be added to Cyanotech's board of directors,  including as more particularly detailed below:

      a.     Since 2007, Cyanotech has had five CEOs.  Based on information and belief, Davis orchestrated the departures of these CEOs because they attempted to run Cyanotech for the

benefit of all stockholders rather than the personal desires of Davis;

b.    Based on knowledge and belief, Davis replaced Cyanotech's previous outside law firm with a law firm that does a substantial amount of legal work for himself and entities he controls, and is therefore primarily loyal to Davis rather than Cyanotech;

c.    As chairman of Cyanotech's board of directors, Davis has regularly called meetings of the board of directors without providing required notice to all of the directors.  In so doing, Davis excluded two of Cyanotech's directors, Gerald Cysewski and Bailey, from these meetings; and

d.    In January 2015, David L. Vied was appointed to the Cyanotech board at the urging of Davis. Mr. Vied is an executive recruiter for a national executive recruiting firm who recruited Mr. Bailey to be Cyanotech's CEO.  In March 2016, Mr. Vied provided the deciding vote (the fourth vote necessary for a majority of a six-person board) for the forced resignation of Mr. Bailey.  Shortly after this vote, Mr. Vied's executive recruiting firm was hired, at the direction of Davis, to recruit Mr. Bailey's successor.  Mr. Vied thus voted on a matter in which he had a material conflict of interest.

23.    In response to a demand by Meridian dated May 6, 2016, on or about May 17, 2016, the Cyanotech Board of Directors appointed a Special Committee comprised of allegedly independent Board members (the "Special Committee") to investigate and consider, among other issues, whether Davis is required to file a Schedule 13D, rather than a Schedule 13G as he had done since 2002 (though Cyanotech did not provide notice thereof to Meridian until June 8, 2016).  The members of the Special Committee constituted a majority of the full Board of Directors.

11644-01/1867314

24.     On September 2, 2016, Cyanotech filed a Form 8-K in which Cyanotech reported the findings of the Special Committee, which concluded, in part, "Mr. Davis should be filing his reports pursuant to Section 13 of the Exchange Act ... on Schedule 13D, rather than on the short form Schedule 13G." The Special Committee further concluded "Mr. Davis made late Schedule 13G filings (in 2004, 2005, 2011, 2011, 2014 and 2015) and failed to file reports pursuant to Section 13 in 2006, 2008 2009 and 2012," and that reports Davis filed in 2002, 2011 and 2013 contained "inaccuracies" the Special Committee concluded were "immaterial."

25.     Davis thereafter filed the Original Schedule 13D on September 20, 2016, but only after (i) Meridian asserted its Demand and filed its Complaint herein; (ii) the Special Committee determined "Mr. Davis should be filing his reports pursuant to Section 13 of the Exchange Act ... on Schedule 13D, rather than on the short form Schedule 13G;" and (iii) the Board adopted the recommendations of the Special Committee.

**D.     Davis Violated, and Continues to Violate, Section 13(d) Because the Schedules 13D Davis Filed Falsely Identify Davis' Purpose**

26.     The Original Schedule 13D Davis filed falsely identified the purpose for which Davis acquired his Cyanotech shares.

27.     More particularly, at Item 4 in the Original Schedule 13D, Davis represented he "acquired shares of [Cyanotech] Common Stock for investment purposes." This statement was and remains false because Davis acquired his shares for purposes of securing and exercising control and influence over Cyanotech, and Davis has had and continues to exercise control and influence over Cyanotech as described herein.

28.     On or about December 20, 2016, Davis filed an amended Schedule 13D (the "First Amended Schedule 13D"), "to update holdings and percentages previously disclosed to reflect a gift of 350,000 share of Common Stock [of Cyanotech] ... to Skywords on December 16, 2016." The transfer was an intra-group transfer that did not affect the total number of Cyanotech shares owned by the Davis/RSF group.

29.     The First Amended Schedule 13D by its express terms did not modify, except as specifically provided, any of the information Davis reported in the Original Schedule 13D, including the information reported in Item 4, and the falsely stated purpose for which Davis acquired his Cyanotech shares.

30.     On March 17, 2017, Davis and RSF, pursuant to an Agreement of Joint Filing, filed an amended Schedule 13D (the "Second Amended Schedule 13D").

31.     According to Item 4 of the Second Amended Schedule 13D, the amendment was "made to disclose the formation of a "group" comprised of RSF, Skywords and Davis within the meaning of Section 13(d)(3) of the Securities Exchange Act of 1934, as amended, … as well as to update the holdings and percentages previously disclosed in the [Original and First Amended] Schedule[s] 13D."

32.     The Second Amended Schedule 13D by its express terms did not modify, except as specifically provided, any of the information Davis reported in the Original Schedule 13D, including the information in Item 4, and the falsely stated purpose for which Davis acquired his Cyanotech shares.

**E.      Davis and RSF Violated Section 13(d) Through March 17, 2017 and the Filing of the Third Amended Schedule 13D Because They Were Part of an Undisclosed Group**

33.     From at least 2011 forward, Davis and RSF have "act[ed] together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer," and, as such, "the group formed thereby shall be deemed to have acquired beneficial ownership . . . of all equity securities of that issuer beneficially owned by any such persons."  By virtue of their acting as a "group" within the meaning of Section 13d(3) of the Exchange Act and Rule 13d-5(b)(1), RSF and Davis each are deemed to have acquired beneficial ownership of the entire 33% position and therefore were required to file a Schedule 13D acknowledging the existence of a group as between them.

34.     Notwithstanding the obligation to file Schedules 13D acknowledging the existence of a group as between them, neither Davis nor RSF filed a required Schedule 13D

11644-01/1867314

1   acknowledging the existence of a group as between them until the filing of the Second

2   Amended Schedule 13D filed on March 17, 2017.

3        35.    On August 15, 2016, Cyanotech filed a Form 10-Q in which it reported its

4   preliminary findings of the Special Committee regarding the question of whether Davis and

5   RSF were acting as a "group" within the meaning of Section 13d(3) of the Exchange Act and

6   Rule 13d-5(b)(1). In its Form 10-Q, Cyanotech reported, among other things, that "[t]he shares

7   held by RSF were originally donated [to RSF] by a foundation affiliated Mr. Davis or acquired

8   from the proceeds of donations made by that foundation."   More particularly, Cyanotech

9   reported "the shares of Company Common Stock owned by RSF are held by RSF in an

10  endowment fund for the benefit of Ginungagap Foundation, a non-profit corporation

11  incorporated in 2004 for the stated purpose of supporting RSF and the Tides Foundation. The

12  terms of the written agreement between Ginungagap and RSF regarding the endowment permit

13  Ginungagap to make non-binding recommendations to RSF with regards to the investment of

14  the endowment fund and request grants from that fund to Ginungagap, but do not provide

15  Ginungagap the authority to vote or dispose of the shares held by RSF. Pursuant to the terms of

16  the bylaws of Ginungagap, two of the directors of Ginungagap are appointed by RSF and one

17  is appointed by Skywords Family Foundation, a charitable foundation affiliated with

18  Mr. Davis. Mr. Davis serves as the president of Ginungagap and as the director appointed by

19  Skywords Family Foundation."

20       36.    Davis, Ginungagap and RSF have acted together in other contexts. In 2000,

21  RSF collaborated with two other nominally charitable entities to form a "supporting

22  organization" named Yggdrasil Land Foundation ("Yggdrasil"). Upon information and belief,

23  RSF reserved the right to appoint at least two members of the Board of Trustees of Yggdrasil.

24  Presently, the Chairman of the Board and the Chief Operating Officer of RSF serve as RSF

25  "appointees" to the Yggdrasil Board of Trustees, and RSF's Vice President of Organizational

26  Culture serves as an "at large" member of Yggdrasil's Board of Trustees.  Also in 2000,

27  Yggdrasil acquired by donation an 87 acre farm in Mendocino California now known as

28  Filigreen Farm.  Sometime after 2004, Ginungagap, under the control of Davis, created an

- 11 -

1    entity known as Filigreen Farm LLC.  Filigreen Farm LLC thereafter entered into a 30-year

2    lease pursuant to which it operates Filigreen Farm.

3           37.     In its September 2, 2016, Form 8-K, Cyanotech reported on the findings of the

4    Special Committee in consideration of whether Davis and RSF are a "group" within the

5    meaning of Section 13d(3) of the Exchange Act and Rule 13d-5(b)(1).   In this context,

6    Cyanotech reported "[t]he Special Committee has not found sufficient information to conclude

7    that a "group" exists under Section 13(d) of the Exchange Act."  The Special Committee noted,

8    however, "that certain of the facts relating to the relationship between Mr. Davis and RSF

9    could be consistent with the existence of a "group" … [and] recommended that Mr. Davis

10   consider whether or not a "group" exists" and that he "include additional disclosures in his

11   filings under the Exchange Act regarding the relationship between Mr. Davis and RSF

12   regarding shares for Cyanotech's common stock."   Notably, the Special Committee did not

13   conclude Davis and RSF did not constitute a "group" within the meaning of Section 13d(3) of

14   the Exchange Act and Rule 13d-5(b)(1).

15          38.     The Original Schedule 13D Davis filed falsely disclaimed the existence of a

16   "group" within the meaning of Section 13(d)(3) of the Exchange Act as between Davis and

17   RSF.

18          39.     More particularly, at Item 6 of the Original Schedule 13D, Davis "expressly

19   disclaim[ed] that a 'group' within the meaning of Section 13(d)(3) of the [Exchange] Act exists

20   between [Davis] and RSF."   Said statement was false as a "group" within the meaning of

21   Section 13(d)(3) in fact existed between Davis and RSF at the time Davis filed the Original

22   Schedule 13D, as detailed below.

23          40.     The First Amended Schedule 13D by its express terms did not modify, except

24   as specifically provided, any of the information Davis reported in the Original Schedule 13D,

25   including as to Item 6, and the false disclaimer of group status as between Davis and RSF.

26          41.     On March 17, 2017, Skywords, Davis and RSF filed the Second Amended

27   Schedule 13D, for the stated purpose of disclosing the formation of a "group" comprised of

28

- 12 -

RSF, Skywords and Davis within the meaning of Section 13(d)(3) of the Exchange Act of 1934.

42.     In the Second Amended Schedule 13D, Skywords, Davis and RSF claim group status was established "pursuant to" a Grant Award dated March 17, 2017 (the "Grant Award"), a copy of which is attached as Exhibit B to the Second Amended Schedule 13D.

43.     Pursuant to the Grant Award, Skywords, under the control of Davis, agreed to contribute an additional 150,000 shares of Cyanotech common stock <u>and</u> $500,000 cash to RSF, the effect of which was to increase RSF's ownership interest in Cyanotech to 16.2% of the outstanding shares of Cyanotech's common stock.   The purpose of the $500,000 cash payment, which was made contemporaneously with the change in the defendants' long-standing position regarding "group" status was not disclosed.

44.     According to the Grant Award, the granted shares are to be "credited to The Filigreen Endowment of Ginungagap Foundation Living Capital Fund."

45.     Notwithstanding, the Grant Award further provides that the shares of Cyanotech stock and funds granted pursuant to the Grant Award, along with "all shares of commons stock of Cyanotech donated (or purchased by [RSF] with funds donated) by Skywords" previously "may be used only for ["RSF's"] charitable and educational activities," those being "[t]o assist [RSF] to fulfill its stated charitable mission of creating financial relationships that are focused on long-term social, economic and ecological benefit."

46.     Pursuant to the Grant Award, Skywords reserved the right to "request" RSF to return Granted Shares "upon material deviation by [RSF] from the purpose of the grant."

47.     According to the Grant Award, RSF agreed not to "sell, transfer or otherwise dispose of any of the granted shares or Cyanotech Shares unless [RSF] provides concurrent written notice to Skywords and Cyanotech at least three (3) days prior to the consummation of any such sale, transfer or other disposition."

48.     Pursuant to the Grant Award, paragraph 4, the parties purported to "acknowledge and agree that there are no prior or current agreements relating to Cyanotech common stock among Skywords and any of its affiliates, including any of its officers or

- 13 -

directors; Davis; and [RSF] and any of its affiliates, including any of its officers or directors." This acknowledgement, however, is contradicted by other provisions of the Grant Award.

### F.   Davis and RSF Acquired Control of Cyanotech While in Violation of Section 13(d)

49.    Davis acquired control of Cyanotech while in violation of his Section 13(d) filing obligations.

50.    From the time Davis joined the Board in March 2003 until today, Davis violated Section 13(d), including by (i) filing on Schedule 13G instead of the required Schedule 13D; (ii) failing to make required filings when acquiring additional shares or transferring shares (to RSF); (iii) failing to make timely filings; (iv) failing to disclose the existence of a "group" since he facilitated and financed RSF's first acquisition of shares in May 2011; and (v) failing to disclose his intent to control Cyanotech, which is ongoing.

51.    There is a factual discrepancy with respect to the date Davis joined the Board. According to the proxy statement filed by Cyanotech on July 16, 2003, Davis joined the Board in March 2003. However, Davis filed a Form 3 on October 31, 2002, to report his acquisition of the convertible debentures in which he disclosed that he was already a director. This date is significant because if Davis made his investment with the expectation of receiving a Board seat, then he always had an intent to exercise control and his initial Schedule 13G filing violated Section 13(d).

52.    All of the shares Davis and RSF acquired since March 2003 (and perhaps earlier-acquired shares as well) – which constitute a control block in Cyanotech – were acquired while Davis and RSF were violating Section 13(d). According to a proxy statement filed by Cyanotech on July 16, 2003, Davis owned 3,148,076 shares, or 17.2%, of Cyanotech's common stock as of June 20, 2003. According to the Second Amended Schedule 13D, Davis and RSF collectively owned 33% of Cyanotech as of March 17, 2017.

53.    Davis first reported his ownership of Cyanotech stock when he filed a Schedule 13G on October 25, 2002 to report his acquisition of common shares issuable upon conversion of convertible debentures that he purchased from Cyanotech in September 2002.

- 14 -

This Schedule 13G reported that he owned 3,463,076 shares, which included 1,923,076 shares issuable upon conversion of the convertible debentures as well as an additional 1,540,000 shares, or 7.6%, of Cyanotech's common stock that according to a Form 3 Davis filed on October 31, 2002, were acquired before he purchased the debentures. Since these additional shares were in excess of 5% of Cyanotech's common stock, Davis was required to report his ownership of these shares but failed to do so until the October 25, 2002 filing.

54. If Davis became a director at the time he acquired the debentures or if he had an understanding to do so or if he had an intent to otherwise exercise or influence control of Cyanotech, then he was in violation of Section 13(d) soon after he acquired the debentures because he was not eligible to file on Schedule 13G.

55. Similarly, Davis and RSF acquired shares of Cyanotech Common Stock at various times from 2011 to March 17, 2017 while in violation of their Section 13(d) filing obligations related to group status as herein alleged.

56. Davis' purchase of the convertible notes from Cyanotech together with his existing 7.6% stake in Cyanotech resulted in Davis owning 17.1% of Cyanotech.

**G.    Davis and RSF own a Controlling Interest in Cyanotech**

57. Davis and RSF own and/or control 33% of the common shares of Cyanotech stock.

58. Davis' and RSF's combined ownership interest constitutes a controlling interest in Cyanotech pursuant to Nevada law. Although perhaps not entirely on point, Nevada's corporate control statute, adopted by the Nevada legislature and thus evidencing the public policy of Nevada, defines a "[c]ontrolling interest" in a Nevada corporation to mean "the ownership of outstanding voting shares of an issuing corporation sufficient, . . . , to enable the acquiring person, directly or indirectly and individually or in association with others, to exercise:

a.    One-fifth or more but less than one-third;

b.    One-third or more but less than a majority; or

- 15 -

c.    A majority or more, of all the voting power of the corporation in the election of directors."

Nev. Rev. Stat. Ann. § 78.3785.

59.    Davis' and RSF's combined ownership interest of 33% represents "one-fifth or more but less than one-third" of the voting shares of Cyanotech, and thus constitutes a controlling interest in Cyanotech pursuant to Nevada law

60.    Cyanotech itself considers a 20% ownership interest in its shares of common stock to constitute "control."   On March 13, 2017, only four days before Davis filed the Second Amended Schedule 13D, the Cyanotech Board, led by Davis in his role as Chairman, approved a form of indemnification agreement to the benefit of directors and officers, including Davis, and authorized Cyanotech to enter into such an agreement with each of its directors and officers.   The form indemnification agreement, irregular in many respects, nonetheless defines a triggering change of control of Cyanotech to occur if "any 'person' … is or becomes the 'beneficial owner' directly or indirectly, of securities of [Cyanotech] representing twenty percent (20%) or more of the total voting power represented by [Cyanotech's] then-outstanding voting securities."

61.    Davis and RSF purport in the Second Amended Schedule 13D to not have any agreements between them regarding the Cyanotech shares they own and/or control.  Numerous pre-existing agreements exist, however, and the Grant Agreement further provides RSF cannot sell the shares it owns without first providing notice thereof to Davis and Cyanotech.  In any event, Davis and RSF have the ability to control Cyanotech and have done so.

62.    By all appearances and reasonable inference, RSF is not independent of its benefactor Davis and will vote at the direction of or to the benefit of Davis, without regard to whether such action would be in the best interest of Cyanotech or its shareholders.

63.    Davis' and RSF's controlling interest is compounded by Davis' position as Chairman of the Board, and by the provision in the Grant Award which allows Davis to "request" the return of the granted shares in the event Davis concludes RSF is not acting consistent with "the purpose of the grant."   In addition, the purpose of the $500,000 cash

- 16 -

payment, which was part of the Grant Award and made contemporaneously with the change in the defendants' long-standing position regarding "group" status, was not disclosed.

**H.     The Cyanotech Board Has Been Given Notice of Certain of The Foregoing Violations of Law and Has Refused Demand of Action**

64.     Meridian informed the Cyanotech Board of the foregoing violations of law, among others, in a letter dated May 6, 2016.  A copy of this letter is attached as Exhibit A.

65.     In its May 6, 2016 letter, Meridian provided facts illustrating Davis' and RSF's failure to comply with Federal securities laws by failing to file Schedules 13D.

66.     In its September 2, 2016 Form 8-K, Cyanotech made clear it would not take action against Davis or RSF for their failure to file appropriate and accurate Schedules 13D or against Davis for providing materially false and misleading information to Cyanotech that was included in its SEC filings.

67.     In a follow-on letter dated September 9, 2016 from counsel for Special Committee to Meridian, expressly speaking to Meridian's "Demand for Action," counsel confirmed that the "Board of Directors … adopted the recommendation of the Special Committee and passed a resolution electing not to pursue the actions you requested be taken in the Demand Letter … .  As such, the Board of Directors has formally refused your demand."

68.     Rather than take action in consideration of whether Davis and RSF constitute a "group" within the meaning of Section 13(d)(3) of the Exchange Act, and hence should file Schedules 13D accurately acknowledging and, in the case of Davis not disclaiming, "group" status, the Board adopted the recommendation of the Special Committee "that Mr. Davis consider whether or not a "group" exists," without direction, oversight or consequence.

69.     The Board refused to take action in consideration of whether Davis and RSF constitute a "group" within the meaning of Section 13(d)(3) of the Exchange Act, and hence should file Schedules 13D.  Instead, the Board merely deferred the issue to Davis, the party most interested in the issue and subject to obvious conflict of interest, for his consideration as to whether or not a "group" exists," without direction, oversight or consequence.  As a result, the failure of Davis and RSF to file accurate Schedules 13D, and the harm to Cyanotech

1    stockholders, including Meridian, caused thereby will continue unless Davis and RSF are
2    compelled by court order to file accurate Schedules 13D.

3         70.     Not only did the Board refuse to take action to remedy these violations of law,
4    they took action to further entrench themselves in office. According to Cyanotech's March 13,
5    2017 Form 8-K, the Board authorized the Company to enter into indemnification agreements
6    with each of its directors and executive officers. While Cyanotech already had indemnification
7    provisions in its bylaws, the indemnification agreements are broader in scope than the bylaw
8    provisions.

9         71.     The indemnification agreements the Board approved contain several irregular
10   provisions, such as allowing the director/officer indemnitee to unilaterally select without any
11   input from Cyanotech the law firm that will authorize the advancement of expenses if
12   Cyanotech were to experience a change of control, rather than giving Cyanotech at least some
13   input into such selection as is customary.

14        72.     It is not uncommon for public companies to enter into indemnification
15   agreements with their directors and officers. Based on knowledge and belief, however, it is
16   unusual for companies to do so if the directors and officers are the subject of on-going
17   litigation related to their corporate activities for which indemnification might be sought.

18                          **IV. CLAIM FOR RELIEF**

19                          **FIRST CLAIM FOR RELIEF**

20              **(Declaratory Judgment and Injunctive Relief under the**

21                     **Exchange Act against Davis)**

22        73.     Meridian incorporates the averments contained in Paragraphs 1 through 72 as
23   though fully stated herein.

24        74.     Davis owns a 16.8% interest in Cyanotech, and has the ability to control and
25   influence, and does control and influence, Cyanotech. Davis therefore is required pursuant to
26   Section 13(d) of the Exchange Act to file Schedule 13D.

27        75.     On or about September 20, 2016, Davis filed the Original Schedule 13D, in
28   which Davis falsely identified the purpose for which he acquired his Cyanotech shares.

76.     More particularly, at Item 4 in the Original Schedule 13D, Davis represented he "acquired shares of [Cyanotech]Common Stock for investment purposes."

77.     Davis' statement in the Original Schedule 13D that he acquired shares of Common Stock for investment purposes was and remains false because Davis acquired his shares of Cyanotech common stock for purposes of securing and exercising control and influence over Cyanotech, and Davis has had and continues to exercise control and influence over Cyanotech as herein alleged.

78.     The First Amended Schedule 13D and the Second Amended Schedule 13D each, by their expressed terms, did not modify, except as specifically provided, any of the information Davis reported in the Original Schedule 13D, including as to Item 4, and the falsely stated purpose for which Davis acquired his interests in Cyanotech.

79.     The Original Schedule 13D, as amended and incorporated into the First Amended Schedule 13D, and the Second Amended Schedule 13D, remains false in that it and they misstate Davis' purpose in the acquisition of his shares in Cyanotech.

80.     That Davis acquired his interests in Cyanotech for purposes of securing and exercising control and influence over Cyanotech as herein alleged, rather than "for investment purposes" as Davis states, is a material fact in that an ordinary reasonable investor would find that information relevant and important in consideration of an investment decision relative to Cyanotech. In addition, such information would be relevant and important to holders of shares of Cyanotech stock in consideration of the voting of their shares relative to the management of Cyanotech.

81.     Davis' failure to fully and accurately make the disclosures required by Section 13(d) deprives Meridian and other Cyanotech shareholders of the protections afforded by that Section and its implementing rules. More particularly, Meridian and other shareholders have suffered irreparable harm in having failed to receive information mandated by Section 13(d) in at least the following material respects:

a.     Meridian and other shareholders have been denied relevant information required to make informed investment decisions

- 19 -

related to corporate governance issues, including its relative ownership position vis-à-vis other individual and group holders of Cyanotech stock;

b.   Meridian and other shareholders have been denied relevant information required to evaluate Davis' and RSF's purposes in forming the undisclosed group alleged herein and the potential impact the formation of that group may have on Cyanotech and Meridian's stock holdings;

c.   Meridian and other shareholders have been denied relevant information required to accurately evaluate the true value of its holdings of Cyanotech stock;

d.   Meridian and other shareholders have been denied relevant information required to make informed investment decisions as to whether to acquire, hold or dispose of Cyanotech stock, and how to exercise its voting rights in the Cyanotech stock it holds; and

e.   Meridian and other shareholders have been deprived of representation by a Board elected by shareholders with full and complete information an ordinary reasonable holder of Cyanotech stock would consider important in voting for and electing a Board.

82.   Irreparable injury to Meridian and other Cyanotech shareholders will persist if Davis is not compelled to file, and does not in fact file, an accurate Schedule 13D.

83.   Davis' repeated failures to comply with his Section 13(d) reporting obligations, occurring over an approximate fourteen year period, allowed Davis to acquire control of Cyanotech while concealing material information from Meridian and other shareholders. If Meridian had known the extent of Davis' control or the undisclosed strategies that he was causing Cyanotech to pursue, Meridian never would have invested in Cyanotech.

- 20 -

84.     Davis' failure, including after the Board adopted the recommendation of the Special Committee, to fully correct his prior inaccurate filings, and his decision to in fact perpetuate the prior inaccuracies in filing the Second Amended Schedule13D, further demonstrate the need for judicial enforcement to ensure Davis makes the full and accurate disclosures Meridian, the investing public and Cyanotech shareholders are entitled to.

85.     The issues outlined herein are an actual case in controversy within the jurisdiction of this Court.

86.     Meridian seeks a declaration of this Court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, finding as follows:

    a.     The Original Schedule 13D was and remains materially false for its failure to properly notify Davis' purpose in acquiring his interests in Cyanotech;

    b.     Meridian is entitled to preliminary and permanent injunctive relief (i) ordering Davis to file a truthful and complete Schedule 13D pursuant to federal law; and (ii) restraining Davis from voting any of the shares of Cyanotech he controls unless and until he files a truthful and complete Schedule 13D pursuant to federal law; and

    c.     Any other relief the Court finds fair and equitable.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment and Injunctive Relief under the**

**Exchange Act against Davis and RSF)**

87.     Meridian incorporates the averments contained in Paragraphs 1 through 86 as though fully stated herein.

88.     Davis has violated and continues to violate Section 13(d) as detailed in the First Claim for Relief.

89.     In addition, Davis and RSF violated Section 13(d) from at least 2011 through March 17, 2017.

- 21 -

90.     From at least 2011 forward, Davis and RSF "act[ed] together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership . . . of all equity securities of that issuer beneficially owned by any such persons."

91.     By virtue of their acting as a "group" within the meaning of Section 13d(3) of the Exchange Act and Rule 13d-5(b)(1), RSF and Davis each were required to file a Schedule 13D acknowledging the existence of a group as between them, rather than a Schedule 13G.

92.     That Davis and RSF acted as a "group" within the meaning of Section 13(d) of the Exchange Act from at least 2011 through March 17, 2017 is a material fact in that an ordinary reasonable investor would find that information relevant and important in consideration of an investment decision relative to Cyanotech, as evidenced by the fact Meridian would not have purchased its shares of Cyanotech common stock had it been aware of said fact.  In addition, such information would be relevant and important to holders of shares of Cyanotech stock in consideration of the voting of their shares relative to the management of Cyanotech.

93.     Notwithstanding the obligation to file Schedules 13D acknowledging the existence of a group as between them, neither Davis nor RSF filed a required Schedule 13D acknowledging the existence of a group as between them until the filing of the Second Schedule 13D filed on March 17, 2017, which acknowledged the existence of a group allegedly created pursuant to the Grant Award.

94.     By all appearances and based on reasonable inference, the Grant Award and the filing of the Second Amended Schedule 13D were pretextual and undertaken with the intent and purpose of creating the appearance of current compliance with Davis' and RSF's Schedule 13D filing obligations and to create and further promote the appearance that Davis and RSF previously were not acting as a "group" and violating Section 13(d).

95.     Despite Davis' and RSF's admission of current group status, as disclosed in the Second Amended Schedule 13D, the Second Amended Schedule 13D fails to comply with the

- 22 -

requirements of Section 13(d) in that it does not disclose Davis' and RSF's prior group activities, implies that a group was formed only in 2017 and does not disclose the control purpose underlying Davis' and RSF's group activities. These continued inaccuracies in the Second Amended Schedule 13D continue to cause harm to Meridian, the investing public and Cyanotech Shareholders.

96.     Davis, with a 16.8% stake in Cyanotech, and RSF, with a 16.2% stake in Cyanotech, together own and control 33% of the outstanding stock of Cyanotech and therefore have the ability to control, and do control Cyanotech.

97.     Davis and RSF acquired shares of Cyanotech common stock—and control over Cyanotech—while in violation of Section 13(d) of the Exchange Act.

98.     Davis' and RSF's failure to fully and accurately make the disclosures required by Section 13(d), included as to them acting as a "group" from 2011 through March 17, 2017, and Davis' and RSFs acquisition of shares of Cyanotech stock while in violation of Section 13(d) deprived Meridian and other Cyanotech shareholders of the protections afforded by that Section and its implementing rules. More particularly, Meridian and other Cyanotech shareholders have suffered irreparable harm in at least the following material respects:

        a.      Meridian and other shareholders were denied relevant information required to make informed investment decisions related to corporate governance issues, including its relative ownership position vis-à-vis other individual and group holders of Cyanotech stock;

        b.      Meridian and other shareholders were denied relevant information required to evaluate Davis' and RSF's purposes in forming the undisclosed group alleged herein and the potential impact the formation of that group may have on Cyanotech and Meridian's stock holdings;

c.      Meridian and other shareholders were denied relevant information required to accurately evaluate the true value of its holdings of Cyanotech stock;

d.      Meridian and other shareholders were denied relevant information required to make informed investment decisions as to whether to acquire, hold or dispose of Cyanotech stock, and how to exercise its voting rights in the Cyanotech stock it holds;

e.      Meridian and other shareholders were deprived of representation by a Board elected with full and complete information an ordinary reasonable holder of Cyanotech stock would consider important in voting for and electing a Board, a fact compounded by Cyanotech's failure to disclose all relevant results of the Special Committee investigation prior to the 2016 meeting of stockholders, to the extent then known; and

f.      Meridian and other Cyanotech shareholders have been subjected to control facilitated by Davis' and RSF's acquisitions of Cyanotech stock while in violation of Section 13(d).

99.      Irreparable injury to Meridian and other Cyanotech shareholders will persist if Davis and RSF are allowed to vote shares acquired while in violation of Section 13(d).

100.      The issues outlined herein are an actual case in controversy within the jurisdiction of this Court.

101.      Meridian seeks a declaration of this Court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, finding as follows:

a.      Davis has violated and continues to violate Section 13(d) as detailed in the First Claim for Relief;

b.      Davis and RSF violated Section 13(d) from at least 2011 through March 17, 2017 for their failure to disclose their status as a group;

- 24 -

     c.     Davis and RSF acquired shares of Cyanotech common stock—and control over Cyanotech—while in violation of Section 13(d) of the Exchange Act;

     d.     Meridian is entitled to preliminary and permanent injunctive relief (i) directing Davis and RSF to file a Schedule 13D acknowledging having acted as a group from 2011 through March 17, 2017; and (ii) restraining Davis and RSF from voting any of the Cyanotech shares they own or control which were acquired while they were in violation of Section 13(d); and

     e.     Any other relief the Court finds fair and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Meridian prays for judgment against Defendants under its Claim for Relief as follows:

     a.     Declaratory and injunctive relief as specifically set forth and requested in the First Claim for Relief and Second Claim for Relief as outlined above;

     b.     Costs and reasonable attorneys' fees as allowed by law; and

     c.     Such other and further relief as the Court deems just or equitable in this case.

///
///
///
///
///
///
///
///
///
///
///
///

- 25 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b) and LR 38-1, Meridian hereby demands a trial by jury of all claims and issues triable as of right by jury.

DATED this 14th day of April, 2017.

**HOLLEY DRIGGS WALCH**
**FINE WRAY PUZEY & THOMPSON**


_____/s/ James D. Boyle_____
JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
HANNAH S. GOODWIN, ESQ.
Nevada Bar No. 13878
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

**KUTAK ROCK LLP**

BRIAN C. BUESCHER, ESQ.
PATRICK B. GRIFFIN, ESQ.
1650 Farnam Street
Omaha, Nebraska 68102

*Admitted Pro Hac Vice*

*Attorneys for Plaintiff Meridian OHC Partners, LP*

- 26 -

1

**CERTIFICATE OF SERVICE**

2      Pursuant to FRCP 5(b), I certify that on the 14th day of April, 2017, I caused the

3   document entitled **THIRD AMENDED COMPLAINT**, to be served as follows:

| Attorneys of Record | Parties Represented | Method of Service |
|---|---|---|
| I-Che Lai, Esq.<br>WILSON ELSER MOSKOWITZ<br>EDELMAN & DICKER, LLP<br>300 South Fourth Street, 11th Floor<br>Las Vegas, Nevada 89101<br><br>Michael P. McCloskey, Esq.<br>WILSON ELSER MOSKOWITZ<br>EDELMAN & DICKER, LLP<br>655 West Broadway, Suite 900<br>San Diego, California 92101 | Defendant Rudolf Steiner Foundation, Inc. d/b/a RSF Social Finance | ☐ Personal Service<br>■ Email/E-File<br>☐ Fax Service<br>☐ Mail Service |
| Dennis L. Kennedy, Esq.<br>Sarah E. Harmon, Esq.<br>BAILEY KENNEDY<br>8984 Spanish Ridge Avenue<br>Las Vegas, Nevada 89148-1302<br><br>James G. Kreissman, Esq.<br>Stephen P. Blake, Esq.<br>SIMPSON THATCHER &<br>BARTLETT LLP<br>2475 Hanover Street<br>Palo Alto, California 94304 | Attorneys for Defendant Cyanotech Corporation | ☐ Personal Service<br>■ Email/E-File<br>☐ Fax Service<br>☐ Mail Service |
| Alex L. Fugazzi, Esq.<br>V.R. Bohman, Esq.<br>SNELL & WILMER LLP<br>3883 Howard Hughes Parkway<br>Suite 1100<br>Las Vegas, Nevada 89169<br><br>Timothy P. Crudo, Esq.<br>Lynsdsey M. Marcelino, Esq.<br>COBLENZ PATCH DUFFY &<br>BASS LLP<br>One Montgomery Street, Suite 3000<br>San Francisco, California 94104-550 | Attorneys for Defendant Michael A. Davis | ☐ Personal Service<br>■ Email/E-File<br>☐ Fax Service<br>☐ Mail Service |

*Juri Guzman*

An employee of Holley Driggs Walch
Fine Wray Puzey & Thompson

- 27 -